THE STATE OF MONTANA, Acting by and through the STATE HIGHWAY COMMISSION of the State of Montana, Plaintiff and Appellant, v. THOMAS F. KENEALLY, Defendant and Respondent.

No. 10410

Submitted April 2, 1963. Decided August 9, 1963.

384 P.2d 770

258

Clayton Herron (argued), Helena, Daniel J. Sullivan, William E. O'Leary, Helena, for appellant.

Corette, Smith & Dean, Butte, McKeon & Brolin, Anaconda, Kendrick Smith, (argued), Butte, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment entered in the district court of Deer Lodge County in a condemnation proceeding instituted by the State of Montana, the plaintiff and appellant.

The defendant operates a chain of service stations. In the Summer of 1959, he constructed a station about one-half mile east of Anaconda. This station, which turned out to be his most profitable one, was located on a tract of land adjacent to and north of Highway 10-A. The tract, 300 feet square in area, was owned by the Anaconda Company. On July 1, 1959, the defendant and the Anaconda Company entered into a lease at a rental of $100 per year for a primary term of ten years. The lease provided that the defendant could exercise an option to renew the lease for another ten years. The lease further pro-

vided that "if the Lessor at any time desires to terminate this lease it may do so by giving the Lessee ninety (90) days written notice that said lease is terminated and at an end and all rights of the Lessee shall cease and be wholly terminated and at an end." With knowledge that the Company rarely invoked this clause, defendant entered into the lease.

The property was well suited for defendant's purposes. The land was the same level as the roadway and the entire 300 foot frontage could be used by patrons. A secondary road which intersected Highway 10-A formed the eastern boundary of the tract and provided another means of entry.

On June 3, 1960, defendant was informed by the State that a four-lane highway was to be constructed in place of the existing roadway. Since the new road was to be wider and was to utilize a median or traffic divider, it was necessary to increase the width of the existing right-of-way. Accordingly, the defendant was informed that 83 feet of his frontage would be taken by the State, leaving him a tract 217 feet by 300 feet. The only improvements on the portion being taken were two signs, only one of which was owned by the defendant and for which he claims damages. This sign was valued at $900 by the defendant.

The new highway was not of the "controlled access" type, but the grade was to be raised 2.9 feet. Such increase would thereby leave a back-slope that could not be safely traversed by automobiles, and, hence, it was necessary to provide the station with a specially constructed approach. The defendant requested more than one such approach but was unsuccessful in his efforts. Furthermore, the median could be crossed only at specified intervals provided by the State. The only break in the median in the vicinity of the station was to be directly across from the secondary road bounding the station on the east. The principal issues presented at the trial of this controversy were the value of the interest taken and the damage

rendered to the remainder. The jury found the value of the former to be $3,300 and the damage to the latter to be $10,000.

The State specifies numerous errors which are hereafter discussed.

The State first contends that the court erred in admitting, over objection, testimony by the defendant to the effect that he had never known the Anaconda Company to cancel a lease by means of the 90-day clause quoted above, and that he had received assurance from Company officials that such would not likely be done. The basis for the State's argument is that the lease was an integrated contract and that such testimony varied the terms thereof, and was a violation of the parol evidence rule. We do not agree that such testimony varies the terms of the lease. The State surely would not contend that such testimony would foreclose the Anaconda Company from invoking the clause, or that such evidence would be binding on that Company. The only value of the defendant's testimony, as we view it, is not to vary the terms of the lease, but to indicate the value of the interest possessed by the defendant. The court gave a proper instruction covering this phase as hereinafter discussed in connection with State's proposed Instruction N. Therefore, there was no error committed by the trial court.

The State contends, as another specification of error, that testimony by the defendant-landowner was inadmissible because his estimates of the rental value of the property taken were based on conjecture and speculation. In response to the State's objections, the trial judge stated that in his opinion "an owner may always testify as to the value of his property" and that "an owner is more or less an exception to this business of experts testifying." Since this case was tried before our decision in Alexander v. State Highway Comm'n, 142 Mont. 93, 381 P.2d 780, the rule restated in that case is not here applicable, but even under our views there expressed defendant's testimony would be admissible. Prior to that decision in

Klind v. Valley County Bank of Hinsdale, 69 Mont. 386, 222 P. 439, the rule was expressed that *prima facie* proof of ownership of property is all that was required to qualify a witness to make an estimate of its reasonable value. Vukmanovich v. State Assurance Co., 82 Mont. 52, 264 P. 933, emphasized that such testimony must be reasonable. In light of such a rule, upon reviewing the record, it appears that the defendant's testimony was reasonable and not incredible and, therefore, was admissible.

The State contends that a letter introduced in evidence was self-serving and, hence, not admissible. The letter, written by the defendant and sent to the State highway engineers, requested additional approaches and stated the opinion that defendant was being deprived of property without just compensation. Also introduced was a reply letter from the engineers wherein it was stated that the approaches furnished were reasonable and adequate. The State, of course, did not object to the reply. Both parties produced further testimony to support the respective views expressed in the letters. We agree that the letter written by defendant was self-serving. However, we are of the opinion that no prejudicial error was committed.

The State contends that neither Dowdall nor Longfellow, witnesses for the defendant, was qualified to testify as an expert appraiser. Their qualifications are hereafter set forth.

John Dowdall was employed as assistant cashier at an Anaconda bank. He had been so employed for five years. As part of his duties he had often reviewed transactions involving business properties. Occasionally he would do the appraising himself, although he seems normally to have merely reviewed such appraisals. He was personally acquainted with the property in question and was familiar with the terms of the lease.

Arthur Longfellow had lived in Anaconda since 1933. In his business he had worked closely with appraisers and real estate men in probate matters. He had done much appraising

himself. He was personally familiar with the property in question and understood the terms of the lease. He had not, however, appraised any other property under such a lease.

At this point the rule in State Highway Comm'n v. Peterson, 134 Mont. 52, 328 P.2d 617, should be noted. It is a matter of discretion of the trial judge to determine witnesses who are competent to give opinions on property valuation. "It must appear that the witness has some peculiar means of forming an intelligent and correct judgment as to the value of the property in question beyond what is presumed to be possessed by men generally. Lewis, Eminent Domain, § 656, p. 1127 (3d ed.). One who knows the real property in question and is familiar with the uses to which it may be put, may testify as to its market value. The witness need not know of any sales and he need not be a technical expert." 134 Mont. at 63, 328 P.2d at 623. In light of this rule, we think the contention that Dowdall and Longfellow were not qualified has little merit. This was a matter within the discretion of the trial judge and in view of the evidence, we conclude no error has been committed.

According to the State, the court erred in permitting the defendant to speculate as to the income from the Anaconda station by assigning an approximate percentage of his total income to the single station. This specification of error has little meaning outside the text of the record. Therefore, it is necessary to discuss the testimony elicited at the trial. On direct examination, the defendant attempted to testify as to the number of gallons sold by the Anaconda station for the preceding year. The State objected to the defendants using a financial statement prepared for him, instead of his voluminous daily records. The court overruled such objection on the strength of section 93-401-12, R.C.M.1947, which provides: "There can be no evidence of the contents of a writing, other than the writing itself, except in the following cases: * * *

"5. When the original consists of numerous accounts or other documents, which cannot be examined in court without

great loss of time, and the evidence sought from them is only the general result of the whole."

While the financial statement, itself, was not introduced, defendant was permitted to refresh his recollection therefrom. He testified that his Anaconda station sold over 400,000 gallons of gasoline in the preceding year.

To protect the State, the trial judge ordered the defendant to "produce those books for the State of Montana, or his records, or whatever they require to conduct their cross examination, so that they can satisfy themselves as to the truth of these statements." The defendant complied.

On cross-examination the defendant testified that in the preceding year his stations sold a total of nearly a million gallons and that the Anaconda station was responsible for about 40 percent of the total. On re-direct defendant testified that 60 percent of his gross income was attributable to the Anaconda station, it being the most efficient of his chain. The State moved to strike such testimony on the grounds that the "better records would be the books themselves, and his best testimony would be the books." The court again referred to section 93-401-12 and stated that "at any time these books could have been— and records—could have been examined, either by the process of subpoena duces tecum, or by deposition, and you could have had experts go through these records." The court was of the opinion that such testimony could have been anticipated by the State, and that it was an imposition on the court and jury to take the time to examine the voluminous records in open court.

After viewing the record as a whole, we are of the opinion that the State was given adequate opportunity to examine the defendant's business records to facilitate its cross-examination. It was not the trial court's fault that defendant's approximations stand unrefuted.

The court gave the following instructions to the jury:

"You are instructed that in determining the damages, if any, to the remainder of the property not appropriated, you may

consider the depreciation in the rental value of this portion of the premises by reason of the building of said new highway, deducting, however, the rent payable to The Anaconda Company by defendant." (No. 9)

The State objected to such instruction and cites the same as error on the ground that there is no evidence to support the statement therein contained. The record shows, however, that a Mrs. Campbell, appraiser for the defendant, testified that, in her opinion, the rental value of the remainder had "decreased in half."

The State's major contention which embodies five specifications of error is framed under the heading "The Right of Access and the Police Power." The position of the State is that had the proper instructions been given and the erroneous ones refused, the jury would have been able to comprehend the relationship of a landowner's right of access and the State's power to regulate travel on its highways.

The court gave the following instructions:

"You are instructed that in determining the damages, if any, to the remaining portion of the leasehold not taken, you may consider how the highway proposed to be constructed by plaintiffs will interfere, if at all, with the access from the portion not sought to be condemned." (No. 10)

"You are instructed as to the area of the leasehold not taken, in determining whether or not there was any damage thereto, you may consider whether there was any diminution in the reasonable right of access thereto by reason of the taking of the front area and the construction of the new highway." (No. 11)

The State contends that the above instructions, which were given over its objections, are confusing because "access" and "right of access" are not specifically defined, and, further, that they would permit the jury to consider matters which are not compensable. The State admits it could not, without payment, deprive the defendant of all access to his station. It is their position, however, that since the defendant has been allowed

*some* access to his property the jury should not be allowed to award damages for restriction of access.

Both parties agree with the statement of the law contained in State's brief, to-wit: "* * * it must be stated that the right of access, by its very nature, is subject to the public's primary right to regulate traffic and travel on the street and is the right of *reasonable* ingress and egress from the abutting highway." (Emphasis is the State's.)

The State contends that the above rule, approved by both parties is not fully covered by Instructions 10 and 11.

The issue, then, boils down to whether or not the restrictions imposed on defendant's access are unreasonable. We are cited to cases in which it has been held that a median is not such an unreasonable restriction. See Iowa State Highway Comm'n v. Smith, 248 Iowa 869, 82 N.W.2d 755, 73 A.L.R.2d 680; People v. Sayig, 101 Cal.App.2d 890, 226 P.2d 702; Holman v. State of California, 97 Cal.App.2d 237, 217 P.2d 448; Langley Shopping Center v. State Roads Commission, 213 Md. 230, 131 A.2d 690; Dougherty County v. Hornsby, 213 Ga. 114, 97 S.E.2d 300; Ryan v. Rosenstone, 20 Ill.2d 79, 169 N.E.2d 360.

We are also cited to cases in which it has been held that the right of access is not the right of ingress and egress at all points along the frontage. See King v. Stark County, 66 N.D. 467, 266 N.W. 654; People ex rel. Department of Public Works v. Murray, 172 Cal.App.2d 219, 342 P.2d 485; Iowa State Highway Commission v. Smith, supra. But we have not been cited to a case involving the utilization of a median, a change in grade, the use of a single approach and other facts as are presented in this particular appeal. As was stated in Iowa State Highway Comm'n v. Smith, 248 Iowa at 877, 82 N.W.2d at 760:

"No hard and fast rule can be stated as to whether an abutting property owner has been denied access that is reasonable * * *. In most instances the question is one of fact, not of law, and its determination depends largely upon the evidence in the particular case."

As appears hereafter, we are of the opinion that the State's position was not adequately presented to the jury.

The State offered the following proposed instructions:

"You are instructed that no compensation may be awarded to the lessee in this action merely because traffic may be diverted as the result of construction of median dividers on the highway." (No. M.)

"You are instructed that the defendant in this case may not be compensated for any loss of business resulting from the taking of the property in question by the plaintiffs. However, the volume of business conducted or the revenue on the property is a circumstance, but not a conclusive circumstance, that may be taken into consideration in determining the market value of the lease." (No. K.)

After reviewing the record, we find here as we did in State Highway Comm'n v. Peterson, supra, 134 Mont. 52, 328 P.2d 617, a tendency to treat defendant's claim for damages as one based on a "loss of business" due to diversion of traffic. Much testimony has been elicited to the effect that east-bound traffic will encounter much difficulty in attempting to cross the conflicting lanes, negotiate the single 48 foot approach and enter the defendant's station. Defendant testified that his business will suffer substantially due to the regulation of traffic. We noted in the Peterson case, 134 Mont. at 64, 328 P.2d at 623, that "In all cases where a seller is ready and willing to sell and a purchaser is ready and willing to buy, and involving sales of hotels, bars, cafes, garages, farms, service stations, stores and the like, a purchaser naturally wants to know something about gross income, gross expenses and net profits before buying." However, it must be noted that such considerations are relevant only in determining a decrease in market value of the remainder, and do not furnish a claim for relief based on loss of business. This distinction, we think, should have been meticulously pointed out to the jury. The State has taken our explanation in the Peterson case and of-

fered it as proposed Instruction K, quoted above. Therefore, we conclude that the trial judge committed error in refusing to give proposed Instructions K and M.

The State also offered the following instructions:

"You are instructed that the use of highways and streets may be limited, controlled and regulated by the public authority in the exercise of the police power, whenever, and to the extent necessary to provide for and promote the safety, peace, health, morals and general welfare to the people, and is subject to such reasonable and impartial regulations adopted pursuant to this power as are calculated to secure to the general public the largest practical benefit from the enjoyment of the easement, and to provide for their safety while using it." (No. O)

"You are instructed that the right of access does not embrace all points on the common boundary on the entire length of the highway. Although the right to enter the land connot be cut off, free and convenient access is all that is contemplated. If the defendant's means of ingress and egress are not substantially interfered with, the property owner has no cause for complaint, and may not insist on the maintenance and construction of the road in such a way as to afford him direct access to his property at all adjacent points." (No. P)

We have already noted that the State need only pay compensation when access has been completely denied or when the access provided is unreasonable. Proposed Instruction O states a rule of law that is, in our opinion, axiomatic. We think, however, that without said Instruction the jury would have an incomplete or confused understanding of the role of the State.

While the rule of law pertaining to access is stated elsewhere, proposed Instruction P should have been given to supplement the jury's understanding of the right of access. The State cites the following authorities for proposed Instruction P: King v. Stark County, supra; People v. Murray, supra;

Iowa State Highway Comm'n v. Smith, supra. We concur in such an instruction and think it was error to refuse the same.

The State also offered the following instruction which was refused by the court:

"You are instructed that no compensation may be awarded to the lessee in this action for a change of grade of the highway which is constructed near his service station, because this highway is not located within the limits of a city or town." (No. L)

This proposed instruction was apparently drafted as a converse statement or interpretation of section 11-2601, R.C.M.1947, which provides that damages must be paid for raising the grade of a street abutting an improved lot in any city or town. While this court held in State ex rel. City of Miles City v. Northern Pacific Ry., 88 Mont. 529, 295 P. 257, that said statute was a limitation on the police power of the State, this surely does not mean that in a situation in which the statute is not applicable the police power is unbounded. Indeed, Article III, § 14, of the Montana Constitution which provides that private property cannot be taken without payment of just compensation, is a more significant limitation of the State's police power than is section 11-2601. As was noted in Less v. City of Butte, 28 Mont. 27, 72 P. 140, 61 L.R.A. 601, this constitutional mandate is self-executing and requires no legislation to arouse it from dormancy. Hence, the proposed instruction was clearly erroneous and properly refused.

[14 Finally the State offered proposed Instruction N which was refused:

"You are instructed that the lessee's lease may be terminated by the owner of the land upon notice of ninety (90) days. Therefore, in determining damage, if any, to the lessee's leasehold interest, you shall consider the lease term to be ninety (90) days."

The court, instead, gave Instruction No. 4:

"You are instructed that it is the law in Montana that the

fact that a lease may be terminated by the lessor does not destroy the right of the tenant to compensation, but is a circumstance to be considered in determining the proper award to be made."

In view of the testimony and the circumstances surrounding the lease, we are of the opinion that proposed Instruction N would not have accurately described the defendant's leasehold interest. On the other hand, we agree with the trial judge's selection of No. 4 as proper under the facts of this case.

Defendant has made two motions to dismiss before this court. The first motion, typewritten and filed with the clerk of this court is denied because there is here no showing of laches. The second motion, made orally, does not comply with our Rule XI(1) which requires that all motions be written and filed with the clerk of this court. Hence, the second motion is also denied.

The judgment is reversed and the cause remanded for a new trial.

MR. JUSTICES CASTLES, JOHN C. HARRISON and ADAIR, concur.

MR. JUSTICE DOYLE did not participate in the hearing or oral argument of this appeal.