## H. O. HENDRICKSON AND OTHERS v. STATE AND OTHERS.

127 N. W. (2d) 165.

March 20, 1964—No. 38,692.

*Nitzkowski & Bray,* for appellants.

*Walter F. Mondale,* Attorney General, *Rolf O. Slen* and *Perry Voldness,* Deputy Attorneys General, *William J. Young,* Special Assistant Attorney General, and *Sydney Berde,* for respondents.

*Donald L. Lais,* Corporation Counsel, and *Thomas J. Stearns,* Assistant Corporation Counsel, for city of St. Paul, amicus curiae.

*Richard E. Kyle, B. C. Hart,* and *David C. Forsberg,* for Rose Building Corporation, amicus curiae.

OTIS, JUSTICE.

These proceedings were brought by Hendrickson and Brown as vendee and vendor of property abutting a "controlled access highway"

in the outskirts of the city of Rochester. The relief sought is to require the state to institute condemnation proceedings, or in the alternative to pay plaintiffs damages, for denying them access to the main traveled portion of the highway which is newly constructed on the previously established right-of-way adjoining plaintiffs' property. From a summary judgment of dismissal, plaintiffs appeal.

The action was submitted on stipulated facts. Prior to the conversion to a controlled-access highway, plaintiffs' property abutted U. S. Highway 63, a conventional two-lane roadway on a 200-foot right-of-way approximately 2 miles south of the city of Rochester. Traffic moved in both directions on a tarvia surface 28 feet in width, adjacent to which were gravel and dirt shoulders. Plaintiffs' property was 85 feet west of the traveled portion of the highway and had access to it over two connecting roadways. The real estate in question had a frontage of 123 feet and an average depth of approximately 265 feet. It was used for a motel, constructed in the year 1953 and sold to the Hendricksons by the Browns in 1956. Thereafter the state designated the thoroughfare a controlled-access highway, and in 1958 began a reconstruction program which is the subject of this litigation.

The main traveled portion of the highway is now divided into two one-way surfaces, each 24 feet in width and separated by a 70-foot median strip. To the west is a 40-foot strip dividing the southbound lane from a new frontage or service road which is 24 feet in width, the west edge of which is now 40 feet from plaintiffs' east property line and separated from it by another median strip. Plaintiffs have access to the service road over the same driveways they previously used, now reduced in length from 85 feet to 40 feet. There are temporary crossovers 100 feet north and 800 feet south of plaintiffs' property, furnishing access between the service road and the main highway in both directions. The changes here under consideration are illustrated in plats we have included as part of the opinion.

The state has taken no additional property on plaintiffs' side of the right-of-way in converting to a controlled-access highway but has lo-

N

BEFORE

Plaintiffs' Property

MOTEL

S. 32nd ST.

Right-of-Way Line

OLD T.H. 63

Right-of-Way Line

33rd. STREET S.

AFTER

Plaintiffs' Property

MOTEL

Ent.

Ent.

Ent.

Ent.

Entrance

S. 32nd ST.

TO ROCHESTER—3 MILES

SERVICE LANE ON T.H. 63

Grassed Median Strip

SOUTHBOUND LANE T.H. 63

Grassed Median Strip

NORTHBOUND LANE T.H. 63

Right-of-Way Line

Right-of-Way Line

33rd. STREET S.

cated the surfaced traffic lanes of both the through highway and the service road within an area consisting of the previously existing right-of-way and 22 additional feet on the east. There are, however, physical as well as legal barriers preventing direct access to the main highway from plaintiffs' property.

The trial court held that by furnishing plaintiffs a service road adjacent to their property the state had afforded them access equivalent to what they previously enjoyed, except for the inconvenience of a circuitous route to the through highway for which no damages were recoverable.

The Minnesota Constitution by amendment adopted in 1896 confers a right to compensation for damaging as well as for taking private property.[1] By statute a controlled-access highway is one to which an abutting property owner may have only limited access or no access whatever.[2] Minn. St. 1957, § 160.702, subd. 3, and Minn. St. 160.08, subd. 3, prohibit ingress to and egress from, or travel across, controlled-access highways except at points designated by appropriate authorities, but to the extent property rights are taken, the statutes require compensation by purchase or condemnation. Minn. St. 1957,

---

[1]Minn. Const. art. 1, § 13, provides: "Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured." See, Vacation of Part of Town of Hibbing, 163 Minn. 439, 450, 204 N. W. 534, 538, 205 N. W. 613. While our decision hinges on constitutional grounds, we believe the language of Minn. St. 161.24, subd. 3, authorizing the construction of service roads "in mitigation of damages," adopted after these proceedings were begun, evinces a legislative intent to compensate abutting owners for losing access.

[2]Minn. St. 1957, § 160.702, subd. 3; Minn. St. 160.02, subd. 12.

" 'Controlled access highway' means, in Chapter 169, every highway, street, or roadway in respect to which the right of access of the owners or occupants of abutting lands and other persons has been acquired and to which the owners or occupants of abutting lands and other persons have no legal right of access to or from the same except at such points only and in such manner as may be determined by the public authority having jurisdiction over such highway, street or roadway." Minn. St. 169.01, subd. 54.

§ 160.702, subd. 4; Minn. St. 160.08, subds. 4 and 5. In mitigation of damages, however, the statutes provide for the construction of service roads where a cul-de-sac results. L. 1959, c. 500, art. II, § 24, subd. 2. Cf. Minn. St. 161.24, subd. 3.

The narrow question which we must determine is whether or not plaintiffs' property has suffered compensable damage by being denied access to the main thoroughfare except at interchanges yet to be designated, if the property has unlimited access to a service road over which the main thoroughfare may be reached by a circuitous route.

Since the highway authorities have a right and duty to eliminate the temporary crossovers whenever they deem it advisable to do so, we hold that the crossovers may not be considered in mitigation of damages.[3] If plaintiffs are entitled to compensation it is based on the assumption that access to the main thoroughfare will only be available at whatever distance from plaintiffs' property the authorities may hereafter designate. The proximity or remoteness of interchanges may not only affect the right to damages but the amount of damages as well.

The weight of authority, including Minnesota, treats access to a public highway from abutting property as a right which may not be denied without compensation.[4] Where, as here, there has been no taking of additional land and the abutting property still has access to a service road constructed on the old right-of-way but can no longer be reached from the main thoroughfare except by a circuitous route, the problem of dividing the consequential economic impact between the abutting owner and the traveling public presents a difficult question

---

[3] Where crossovers provide suitable access, the state could effect an economy if the law were amended to permit the determination of damages to be deferred until after they are actually removed, since in some instances they may prove to be permanent.

[4] Burnquist v. Cook, 220 Minn. 48, 57, 19 N. W. (2d) 394, 399; Gustafson v. Hamm, 56 Minn. 334, 339, 57 N. W. 1054, 1055, 22 L. R. A. 565; Underwood v. Town Bd. of Empire, 217 Minn. 385, 388, 14 N. W. (2d) 459, 461; State, by Burnquist, v. Miller Home Development, Inc. 243 Minn. 1, 9, 65 N. W. (2d) 900, 905. See, Annotations, 43 A. L. R. (2d) 1072 and 73 A. L. R. (2d) 689, 691.

of public policy.[5] All courts seem to agree that if the regulation or restriction falls within the state's "police power," no compensable loss has occurred.[6] Included in this category are the establishment of one-way streets and lanes of traffic; median strips prohibiting or limiting crossovers from one lane of traffic to another; restrictions on U-turns, left and right turns, and parking; and regulations governing the weight, size, and speed of vehicles. No compensable damages are sustained by such restrictions and regulations which govern all motorists, including abutting property owners, once they are on the traveled portion of the thoroughfare.[7] While courts have assumed that designating a regulation an exercise of police power prevents compensation by eminent domain proceedings, for practical purposes this is simply a convenient

[5]In re Appropriation of Easement for Highway Purposes, 93 Ohio App. 179, 186, 112 N. E. (2d) 411, 415; Iowa State Highway Comm. v. Smith, 248 Iowa 869, 876, 82 N. W. (2d) 755, 759, 73 A. L. R. (2d) 680, 686; Hedrick v. Graham, 245 N. C. 249, 256, 96 S. E. (2d) 129, 134; Oklahoma Turnpike Authority v. Chandler (Okla.) 316 P. (2d) 828, 832.

[6]"* * * The dividing line between restrictions which may be lawfully imposed under the police power and those which invade the rights secured to the property owner by the constitutional provisions that his property shall not be taken or damaged without compensation, nor he be deprived of it without due process of law, has never been distinctly marked out, and probably cannot be. As different cases arise, the courts determine from the facts and circumstances of the particular case whether it falls upon one side or the other of the line." State ex rel. Lachtman v. Houghton, 134 Minn. 226, 230, 158 N. W. 1017, 1019, L. R. A. 1917F, 1050.

See, Annotation, 73 A. L. R. (2d) 689, 692; Campbell, *The Limited-Access Highway—Some Aspects of Compensation,* 8 Utah L. Rev. 12, 16; 3 Stanford L. Rev. 302; Kucera, *Eminent Domain Versus Police Power—A Common Misconception,* 1959 Institute on Eminent Domain 1; 56 Nev. U. L. Rev. 594; State Highway Comm. v. Burk, 200 Ore. 211, 230, 265 P. (2d) 783, 792; Bacich v. Board of Control, 23 Cal. (2d) 343, 351, 144 P. (2d) 818, 823.

[7]Iowa State Highway Comm. v. Smith, 248 Iowa 869, 879, 82 N. W. (2d) 755, 761, 73 A. L. R. (2d) 680, 688; McMoran v. State, 55 Wash. (2d) 37, 39, 345 P. (2d) 598, 599; State Highway Comm. v. Burk, 200 Ore. 211, 230, 265 P. (2d) 783, 792; Pennysavers Oil Co. v. State (Tex. Civ. App.) 334 S. W. (2d) 546.

way of describing which activities confer a right to damages and which do not. The prohibiting or limiting of access to a highway may well be an exercise of police power in the sense that it is designed to promote traffic safety, but at the same time it may cause compensable injury to an abutting owner. The damage to him must be different in kind and not merely in degree from that experienced by the general public.[8] The weight of authority, with which we agree, holds that a property owner has no vested interest in the continued flow of the main stream of through traffic, and the state may divert it to a new location without being liable for consequential economic losses which owners abutting on the old highway may sustain.[9] Those who are not abutting owners have no right to damages merely because access to a conveniently located highway may be denied, causing them to use a more circuitous route.[10]

While some courts have insisted that owners are not justified in assuming a highway will remain "a changeless road in a changing world,"[11] this position begs the question. By granting or withholding damages we determine whether such an assumption is well founded. In any case, historically the right to access has been based on a number of sound factors. In some instances the original owner has dedicated a part of his land to the public for roadway purposes, and hence

---

[8]State ex rel. State Highway Comm. v. Silva, 71 N. Mex. 350, 352, 378 P. (2d) 595, 596; Robinett v. Price, 74 Utah 512, 515, 280 P. 736, 737; Gayton v. Department of Highways, 149 Colo. 72, 79, 367 P. (2d) 899, 902; Bacich v. Board of Control, 23 Cal. (2d) 343, 349, 144 P. (2d) 818, 822; Holland v. Brownville Grain Co. 174 Neb. 742, 119 N. W. (2d) 304; Anhoco Corp. v. Dade County (Fla.) 144 So. (2d) 793, 798; Oklahoma Turnpike Authority v. Chandler (Okla.) 316 P. (2d) 828, 832.

[9]State ex rel. State Highway Comm. v. Danfelser, 72 N. Mex. 361, 368, 384 P. (2d) 241, 246; D'Arago v. State Roads Comm. 228 Md. 490, 180 A. (2d) 488; State Highway Comm. v. Burk, 200 Ore. 211, 230, 265 P. (2d) 783, 792; Pennysavers Oil Co. v. State (Tex. Civ. App.) 334 S. W. (2d) 546; Mabe v. State, 83 Idaho 222, 360 P. (2d) 799; State v. Peterson, 134 Mont. 52, 68, 328 P. (2d) 617, 626.

[10]Vacation of Part of Town of Hibbing, 163 Minn. 439, 451, 204 N. W. 534, 539, 205 N. W. 613.

[11]Darnall v. State, 79 S. D. 59, 67, 108 N. W. (2d) 201, 205.

he and his successors deserve some special consideration. In other cases the roadway has been built with taxes and assessments paid by the abutting owners. It has been suggested that not uncommonly the original owner actually participated in the physical construction of the highway and thereby earned a privilege superior to that of the general public.[12]

In the instant case the property is located on a busy highway at the outskirts of a prosperous community. It is likely that its highest and best use was for commercial purposes such as the motel which was built.[13] The accessibility to the property from the highway and its proximity to the city of Rochester attracted the patronage of the traveling public[14] and gave the property a special status which may entitle the owners to damages notwithstanding the circuitous access afforded by a service road. We therefore hold that plaintiffs may have been deprived of a substantive right which the construction of an abutting service road does not necessarily restore or replace.

So-called "freeways" do not perform the function of "land service roads," which were built for transportation to local schools, churches, and market places. They are designed almost entirely for fast, transient movement between remote terminals. Courts which have denied compensation in controlled-access cases have undoubtedly been influenced by this fact as well as by the appalling waste of human resources resulting from automobile collisions on conventional highways. In terms

[12]Note, 1959 Wash. U. L. Q. 312; Covey, *Frontage Roads: To Compensate or Not to Compensate,* 56 Nw. U. L. Rev. 587, 596; Covey, *Control of Highway Access,* 38 Neb. L. Rev. 407, 411; Clarke, *The Limited-Access Highway,* 27 Wash. L. Rev. and State B. J. 111, 115; Note, 43 Iowa L. Rev. 258, 260.

[13]Cf. Riddle v. State Highway Comm. 184 Kan. 603, 615, 339 P. (2d) 301, 311; State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 325, 350 P. (2d) 988, 992.

[14]"Easement access" includes the right to have the premises accessible to patrons, clients, and customers. Riddle v. State Highway Comm. 184 Kan. 603, 610, 339 P. (2d) 301, 308. Contra, Stefan Auto Body v. State Highway Comm. 21 Wis. (2d) 363, 373, 124 N. W. (2d) 319, 325; Rollins, *The Controlled Access Highway—Conflicting Rights of Highway Users and Abutting Commercial Enterprises,* 11 Baylor L. Rev. 149, 151.

of lives lost, injuries suffered, and property damaged, the experience on controlled thoroughfares has apparently shown a significant improvement.[15] Nevertheless, jurisdictions which have dealt with the subject have come to widely differing conclusions and have demonstrated a remarkable lack of unanimity within the courts themselves. Of the recent decisions which have considered the question, those of Arkansas, New Mexico, New York, South Dakota, Texas, and Wisconsin have denied relief.[16] These opinions adopt the view that an abutting owner has no vested interest in the flow of public travel, and that controlling access is merely the exercise of a state's inherent police power which, if reasonably asserted, gives rise to no cause of action for damages by reason of the diversion of traffic or circuity of route which may result. Actual damages are treated as "damnum absque injuria." Most of these cases involved the isolation of gasoline service stations, restaurants, and motels.

Jurisdictions which have permitted recovery in so-called "inverse condemnation" proceedings are Alabama, Arizona, California, Florida, Georgia, Mississippi, and Washington.[17] These courts acknowledge

---

[15]The fatality rate is said to have been reduced by one-fourth to one-half, operating costs cut about 50 percent, and comparable savings in traveling time realized. Covey, *Frontage Roads: To Compensate or Not to Compensate,* 56 Nw. U. L. Rev. 587, 597. See, also, State Highway Comm. v. Burk, 200 Ore. 211, 231, 265 P. (2d) 783, 793; Riddle v. State Highway Comm. 184 Kan. 603, 611, 339 P. (2d) 301, 309; Covey, *Control of Highway Access,* 38 Neb. L. Rev. 407; Note, 43 Iowa L. Rev. 258, note 3; Hedrick v. Graham, 245 N. C. 249, 254, 96 S. E. (2d) 129, 133.

[16]State Highway Comm. v. Bingham, 231 Ark. 934, 333 S. W. (2d) 728; State ex rel. State Highway Comm. v. Danfelser, 72 N. Mex. 361, 384 P. (2d) 241; Selig v. State, 10 N. Y. (2d) 34, 217 N. Y. S. (2d) 33, 176 N. E. (2d) 59; Darnall v. State, 79 S. D. 59, 108 N. W. (2d) 201; Holbrook v. State (Tex. Civ. App.) 355 S. W. (2d) 235; Nick v. State Highway Comm. 13 Wis. (2d) 511, 109 N. W. (2d) 71, 111 N. W. (2d) 95; Stefan Auto Body v. State Highway Comm. 21 Wis. (2d) 363, 124 N. W. (2d) 319.

[17]Blount County v. McPherson, 268 Ala. 133, 105 So. (2d) 117; State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 325, 350 P. (2d) 988, 992; People v. Ricciardi, 23 Cal. (2d) 390, 144 P. (2d) 799; Blumenstein

the state's right to regulate traffic without liability for the resulting damage, and have no quarrel with the principle that compensation need not be paid for the relocation of a highway diverting the main flow of traffic.[18] However, they hold that where an existing highway is converted into a limited-access thoroughfare, abutting owners have lost a valuable right which is not necessarily restored by furnishing a frontage or service road.

Having reexamined the authorities and considered the arguments presented at the rehearing, we have modified our views but adhere to our conclusion that it was error to grant the state summary judgment without a trial. The matter is therefore remanded for further proceedings consistent with the rules we here adopt.

It will be the duty of the trial court to determine by appropriate inquiry the proposed location of the nearest permanent interchange which will allow access from the service road to the main thoroughfare in at least one direction.

What is reasonable ingress and egress is a fact question.[19] If the

---

v. City of Long Beach, 143 Cal. App. (2d) 264, 299 P. (2d) 347. (The Ricciardi and Blumenstein cases are analyzed and distinguished in People ex rel. Morrison v. Ayon, 54 Cal. [2d] 217, 5 Cal. Rptr. 151, 352 P. [2d] 519.) Anhoco Corp. v. Dade County (Fla.) 144 So. (2d) 793, 797; Clayton County v. Billups Eastern Petroleum Co. 104 Ga. App. 778, 123 S. E. (2d) 187; Hamilton v. Mississippi State Highway Comm. 240 Miss. 895, 128 So. (2d) 742; Mississippi State Highway Comm. v. Finch, 237 Miss. 314, 114 So. (2d) 673; McMoran v. State, 55 Wash. (2d) 37, 345 P. (2d) 598.

[18]Pennysavers Oil Co. v. State (Tex. Civ. App.) 334 S. W. (2d) 546; State Highway Comm. v. Burk, 200 Ore. 211, 230, 265 P. (2d) 783, 792; D'Arago v. State Roads Comm. 228 Md. 490, 180 A. (2d) 488; State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 324, 350 P. (2d) 988, 992; Mabe v. State, 83 Idaho 222, 360 P. (2d) 799.

[19]Mueller v. New Jersey Highway Authority, 59 N. J. Super. 583, 595, 158 A. (2d) 343, 350. Contra, People v. Ricciardi, 23 Cal. (2d) 390, 402, 144 P. (2d) 799, 805.

We do not suggest that in particular cases the trial court may not have the duty of determining as a matter of law that property has or has not been damaged. In the instant case, for example, had the temporary crossovers been made permanent we would have little hesitation in sustaining

jury decides that the location of the proposed interchange substantially impairs plaintiffs' right to reasonably convenient and suitable access to the main thoroughfare, plaintiffs are entitled to damages. Not every denial of immediate or convenient access, however, will support a claim for damages unless the aggravation is to a degree we have here proscribed.[20] It is conceivable in some instances that residential as well as other property may actually benefit by a service road which relieves it of dependence on a heavily traveled thoroughfare for ingress and egress to the surrounding area.

If the jury determines that plaintiffs are entitled to recover, the measure of damages is the difference between the market value of the property before and after suitable access has been denied.[21] In awarding damages the jury may consider any change in the highest and best use which may have consequently occurred.[22] For this limited purpose the court may in its discretion receive with caution evidence of lost patronage. However, no damages as such may be assessed for diversion of traffic or for loss of customers, business, goodwill, income, or profits[23] since the latter depend not only on the location of ac-

---

a ruling that the remaining access was reasonably convenient and suitable as a matter of law.

[20]People v. Ricciardi, 23 Cal. (2d) 390, 402, 144 P. (2d) 799, 805; Clayton County v. Billups Eastern Petroleum Co. 104 Ga. App. 778, 123 S. E. (2d) 187; Oklahoma Turnpike Authority v. Chandler (Okla.) 316 P. (2d) 828, 832; Rigano v. State, 236 N. Y. S. (2d) 820, 822; Blumenstein v. City of Long Beach, 143 Cal. App. (2d) 264, 267, 299 P. (2d) 347, 350; State v. Keneally, 142 Mont. 256, 267, 384 P. (2d) 770, 776; Darnall v. State, 79 S. D. 59, 67, 108 N. W. (2d) 201, 206, 207.

[21]Boxberger v. State Highway Comm. 126 Colo. 526, 535, 251 P. (2d) 920, 925; Anhoco Corp. v. Dade County (Fla.) 144 So. (2d) 793, 798; People v. Ricciardi, 23 Cal. (2d) 390, 401, 144 P. (2d) 799, 805.

[22]State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 326, 350 P. (2d) 988, 993.

[23]People ex rel. Dept. of Public Works v. Ayon, 54 Cal. App. (2d) 217, 226, 5 Cal. Rptr. 151, 156, 352 P. (2d) 519, 524; Arkansas State Highway Comm. v. Bingham, 231 Ark. 934, 937, 333 S. W. (2d) 728, 730; Wilson v. Iowa State Highway Comm. 249 Iowa 994, 1006, 90

cess but on such complex and intangible variables as the initiative and industry of the proprietors. Personal attributes such as these will continue to influence the success or failure of a business enterprise wherever it is located. Hence, the diminution in value of only the real estate is relevant.

Finally, the jury will, of course, consider the distance to the nearest permanent interchange or crossover which permits access in at least one direction, and the extent to which the service road may mitigate the damages.

The opinion filed herein on May 3, 1963, is withdrawn, and the foregoing opinion is substituted in place thereof.

Reversed and remanded.

N. W. (2d) 161, 169; Winn v. United States (9 Cir.) 272 F. (2d) 282. Cf. State v. Keneally, 142 Mont. 256, 266, 384 P. (2d) 770, 776.