KICK'S LIQUOR STORE, INC., d/b/a
Broadway Liquor Outlet,
Respondent,

v.

CITY OF MINNEAPOLIS, Appellant.

No. C7–98–1147.

Court of Appeals of Minnesota.

Dec. 22, 1998.

William S. Rosen, Daniel N. Rosen, Rosen & Rosen, PLLP, St. Paul, for respondent.

Jay Heffern, Minneapolis City Attorney, Stuart R. Browne, Assistant City Attorney, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and WILLIS and MULALLY,* JJ.

## OPINION

CRIPPEN, Judge

The City of Minneapolis contends in this appeal that the trial court employed an erroneous theory of law in determining by summary judgment that the city must initiate condemnation proceedings due to the taking of access rights enjoyed by the owner of a liquor store operation located at the intersection of Broadway Avenue and McNair Avenue in the city. Because the trial court has not undertaken necessary determinations of law and fact, we reverse and remand.

## FACTS

Respondent Kick's Liquor Store owns a parcel adjoining the south side of Broadway Avenue in Minneapolis but with its driveway access on a side street, McNair Avenue, located to its east. The city has placed a barrier that permits traffic to enter onto McNair from Broadway but closes McNair at the south end of the block where it would intersect with Ferrant Place and Queen Avenue North, which are residential streets. Respondent initiated inverse condemnation proceedings on a claim that the value of its property has declined due to the loss of access to and from McNair in the direction of Ferrant as well as harm done by the traffic forced to use respondent's driveway as a means to escape the cul-de-sac created by the road closure. In addition, respondent complains that traffic onto McNair from Broadway must negotiate around an obstruction placed in the center of McNair—a fixture with an attached dead-end sign. The trial court granted a summary judgment in favor of respondent by concluding that the creation of a cul-de-sac resulted in a taking or damage as a matter of law.

## ISSUES

1. Does the city's creation of a cul-de-sac constitute taking or damage as a matter of law, whether or not it substantially impairs respondent's right to reasonably convenient and suitable access to McNair Avenue?

2. Is it error for the trial court to order a final judgment in inverse condemnation proceedings without a final determination of whether or not special injury to property diminishes its market value?

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

3. Are there other issues that make summary judgment inappropriate in the present circumstances of this case?

## ANALYSIS

 The Minnesota Constitution provides: "Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured." Minn. Const. art. I, § 13.

### Cul-de-sac Cases

 Respondent argued, and the trial court evidently agreed, that this case was governed by early Minnesota Supreme Court precedents holding that the creation of a cul-de-sac creates for the abutting property owners a special injury, "different in kind from that suffered by the general public," as a matter of law. *See Vanderburgh v. City of Minneapolis*, 98 Minn. 329, 335, 108 N.W. 480, 481 (1906) (reversing a summary judgment for the city and holding that the plaintiff's injury was different in kind).[1] We conclude that there is merit in appellant's contention that *Hendrickson v. State*, 267 Minn. 436, 127 N.W.2d 165 (1964), subsumes the earlier decisions on cul-de-sacs, creating a general proposition of law that losses of access to and from existing roads are compensable insofar as the change "substantially impairs [the landowner's] right to reasonably convenient and suitable access to the main thoroughfare." *Id.* at 446, 127 N.W.2d at 173.

 Respondent argues that *Hendrickson* announces a list of non-compensable injuries, such as the creation of one-way streets, median strips, and turning restrictions, *id.* at

441, 127 N.W.2d at 170, that does not include cul-de-sacs. We agree that *Hendrickson* does not upset the reasoning of the cul-de-sac cases so as to require a conclusion that the creation of a cul-de-sac can never rise to the level of a compensable taking. To the contrary, *Hendrickson* announces a useable standard for determining whether losses of access—including those caused by cul-de-sacs—may be compensated.

### Summary Judgment in Inverse Condemnation Proceedings

 The trial court concluded the mandamus proceedings by determining that proof of creation of a cul-de-sac is sufficient to show both a unique form of injury and the existence of a compensable loss. This is a conclusion that does not coincide with *Vanderburgh* and its counterparts. The sole question in those early cases was whether the creation of a cul-de-sac created a special injury for abutting property owners. It is well established that no special injury is compensable if it does not result in the diminution of the market value of the property. *See, e.g., Alevizos v. Metropolitan Airports Comm'n*, 317 N.W.2d 352, 360 (Minn.1982) (*Alevizos II* ) (requiring a determination of a measurable diminution in the market value); *Hendrickson*, 267 Minn. at 446, 127 N.W.2d at 173 ("If the jury determines that plaintiffs are entitled to recover, the measure of damages is the difference between the market value of the property before and after suitable access has been denied."); *Maletta v. Oliver Iron Mining Co.*, 135 Minn. 175, 178, 160 N.W. 771, 773 (1916) (plaintiff proved value before and after the creation of the cul-de-sac).[2]

---

1. Respondent also cited *Fitzer v. St. Paul City Ry. Co.*, 105 Minn. 221, 117 N.W. 434 (1908) (reversing a summary judgment that the injury suffered by the plaintiff was not different in kind from that suffered by the general public); *Maletta v. Oliver Iron Mining Co.*, 135 Minn. 175, 160 N.W. 771 (1916) (affirming a $750 jury verdict); *In re Hull*, 163 Minn. 439, 204 N.W. 534 (1925) (holding that the plaintiff's injury was not different in kind, but acknowledging in dictum that it would have been had a cul-de-sac been created); *Locascio v. Northern Pac. Ry. Co.*, 185 Minn. 281, 240 N.W. 661 (1932) (reciting in dictum that there was special damage, different in kind, for the block on which a cul-de-sac had been created but

not for the next block); *In re Widening E. Franklin Ave., Minneapolis*, 240 Minn. 32, 60 N.W.2d 23 (1953) (reciting agreement of the parties that damage traced to the creation of a cul-de-sac was compensable).

2. The city did not raise the issue of whether the cul-de-sac cases actually constituted authority for determining if a taking had occurred, relying wholly on an argument that the cul-de-sac cases were displaced by *Hendrickson*. We address the question because it is an inescapable segment of the analysis of the *Hendrickson* standard and vital for the purposes of clarifying the law appli-

The distinction between the question of whether a party has suffered a damage different from that of the general public and the amount of that damage is significant in defining the nature and scope of proceedings as dictated by the supreme court in a landowner's inverse condemnation proceeding. The purpose of these mandamus proceedings is to determine whether a taking in the form of destruction or damage has occurred. The supreme court has said that this legal inquiry is mixed with questions of fact that may be disputed by the parties. *Alevizos II*, 317 N.W.2d at 360. The first issue in a condemnation proceeding involves the question of whether special injury has occurred; as we have held here, this inquiry is governed by *Hendrickson* for purposes of this case. Normally, this is a question of fact. *See id.* at 445, 127 N.W.2d at 172.[3]

Secondly, if special injury is determined, the court must further decide whether there has been a diminution of the market value of the property. This is also a question of fact. *See id.* at 446, 127 N.W.2d at 173, (change in market value is a jury question). And the damage question may involve a pair of fact-finding efforts (imaginably, even two jury trials), one in the mandamus proceeding to decide if damage occurred, and one in the condemnation proceeding to determine the amount of damages. *See Alevizos II*, 317 N.W.2d at 360.

Other Issues

Temporary Taking

The city contends on its cross-motion to the trial court that it is entitled to a summary judgment as a matter of law because it has made no permanent decision to leave a barrier on McNair Avenue. The city's request for judgment is inappropriate because it has not shown that the public use of McNair is temporary. In fact, this use is continuing. In addition, the city is incorrect

in asserting that a taking must be permanent to be compensable. *See State by Humphrey v. Strom*, 493 N.W.2d 554, 560 (Minn.1992) ("[T]he mere fact that injuries will be temporary * * * is no ground for disallowing recovery, since a purchaser might pay less if he knew such injuries were to be inflicted.") (citing 4A Julius L. Sackman, Nichols, *The Law of Eminent Domain* § 14.08 (rev.3d ed.1989)).[4] Under governing law, temporariness—if the city succeeds at some point in showing that its action is not permanent—constitutes little more than relevant evidence in determining the amount of damages.

Convenient and Suitable Access

The city contends that it is entitled to a summary judgment because, as a matter of law, respondent has not been deprived of reasonably suitable and convenient access. As we have observed, this is normally a question of fact, but the city implies that this is the exceptional case in which a solely legal determination can be made. Because this question has not been addressed in the trial court, we decline to decide the issue and instead direct that the question first be resolved in the trial court on remand.

**DECISION**

An inverse condemnation proceeding requires a two-step inquiry to determine whether compensable taking or damage has occurred, a decision first whether the landowner has suffered a special injury, one different in kind from that suffered by the general public as the result of the city's action, and second whether actual damage has occurred in the form of a measurable diminution of the market value of the owner's property. A finding that the public action is temporary goes to the measure of damages

---

cable in this case for purposes of the remand ordered by this court.

**3.** *But see Hendrickson,* 267 Minn. at 445–46 n. 19, 127 N.W.2d at 172 n. 19 ("We do not suggest that in particular cases the trial court may not have the duty of determining as a matter of law that property has or has not been damaged.")

**4.** *See also 614 Company v. Minneapolis Community Dev. Agency,* 547 N.W.2d 400, 406 (Minn. App.1996) (noting that the Supreme Court held in *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1011–12, 112 S.Ct. 2886, 2891, 120 L.Ed.2d 798 (1992), that "temporary deprivations" were compensable under the federal Takings Clause).

and not to whether a taking or damage has occurred.

**Reversed and remanded.**