Caroline K. Simon, J.
This is a claim for the permanent appropriation in fee of claimants’ land pursuant to section 30 of the Highway Law, as amended, which proceeding is described as Croton River — Peekskill, S. H. 657, Westchester County, Map No. 305, Parcel No. 425.
The aforesaid map and description were filed in the office of the Secretary of State on October 3, 1962 and in the office of the Westchester County Clerk on October 23, 1962 which the parties have stipulated as the taking date. Personal service was made on claimants on February 23, 1965. The claim was timely filed with the Clerk of the Court of Claims and the Attorney-General on August 19, 1964 and has neither been assigned nor submitted to any other court or tribunal for audit or determination.
The court adopts the description of the property as shown on the map and description filed in the Westchester County Clerk’s office, a copy of which is attached to the claim and the same is incorporated herein by reference.
Claimants submit proof of ownership of the property by means of a certified copy of a deed dated May 17,1954 from Carlo Pace' and Lena Rucci Pace, grantors, to Guiseppe Casamassima and Frank Adessa, grantees, recorded in the Westchester County Clerk’s office on the 19th day of May, 1954 in Liber 5329 at pages 486 and 487.
Prior to the appropriation, the property consisted of a rectangular shaped plot fronting for approximately 109 feet on the oast side of South Riverside Avenue (Albany Post Road, U. S. Route 9) in the Village of Croton-on-Hudson, and approximately 141 feet in depth along Oneida Avenue, comprising an area of 15,818 square feet or .363 acre. The plot is level with a slight increase in grade toward the rear. It is improved with a one- *682 story concrete block and stucco structure with an overhanging canopy. The building was designed and used both before and after the appropriation for the sale of soft ice cream under the terms of a leasing agreement entered into with a well-known franchise brand.
The area was zoned C-2. The subject property was a nonconforming use, having been zoned in 1954 as Business E-l with no restrictions as to the number of feet required for each car’s parking as present zoning rules demand. The neighborhood is used by various commercial retail enterprises attracted by the heavy vehicular traffic on Route 9, a major artery.
At the time of the taking the structure was approximately nine years old. It was built on a concrete slab foundation, with a cement walk bordering the front and sides, and the remainder of the plot was blacktopped for use as a parking area by motorist purchasers and consumers of the product sold. The usual public services and utilities, such as water, sewer, gas, electricity, telephone, were in use on the plot.
The building contained a rear storage area, machines for making and dispensing soft ice cream, rest rooms, a front dispensing counter, glass enclosures. It was well illuminated by floodlights and a roof sign. The parking area was also floodlit. When viewed, the property was in good condition.
In the opinions of both appraisers, the highest and best use of the property both before and after the taking was for the use to which it had been put by its owners, in conformity with the zoning requirements, as a retail dispensing stand for soft ice cream. The court so finds.
The State’s taking, designated as Parcel 425 of the State’s taking map referred to above, consisted of a strip of land varying in width from 8 feet at the southern end to 15 feet at the northern end, and running 108.94 feet along the frontage of the property. The taken area measured 1,248.33 square feet or .0286 acre.
Claimants’ appraiser, using the market data approach, valued the property before the taking at $250 per square foot of land, plus $11,600 as the replacement cost of the structure and an additional $500 for the concrete walks, arriving at a total before-value of $56,500.
Claimants’ expert ¿ssesses the direct damage at $6,750, claiming a taking of 1,248 square feet at $5 per square foot, plus $500 for the on-site improvements. To this direct damage figure, he adds ■ a consequential damage to the remaining land (14,570 square feet at $.28) of. $4,100, plus consequential damage to the *683 improvements of $10,800, arriving at a combined figure of $21,650 for all damage.
After claimants ’ appraiser had completed his proof, claimants moved to reduce their damage claim from $50,000 to $21,650. This motion was granted.
Claimants allege and the State’s engineer also so testified, and the court finds, that a new drainage problem has been created since the taking and the road change, by reason of water collecting near the southwest corner of the property.
The State’s appraiser valued the land at $1.03 per square foot, or $150 per front foot, producing a land value of $16,300, plus a depreciated value of the improvements, using the income approach, at $16,200, thus arriving at a total before-value of $32,500. The State’s expert, having valued the land taken at $1,300 (1,248 square feet at $1.03), and added $400 for the on-site improvements, and considered the remainder parcel consequentially damaged in the sum of $1,500, and arrived at a total combined damage figure of $3,200.
Though the State’s appraiser used the income approach, he also presented and analyzed a large number of so-called com-parables as the basis for his land values. The court finds many of these .so-called comparables not the same in size, topography, zoning location, or use as the subject property. The court considered and viewed all comparables presented by both appraisers and gave to them the weight after adjustment which their comparability warranted.
The State* presented income tax records in relation to determining the highest and best use of the property. These records showed income increased at the stand after the taking. Claimants asserted that such a result was due to many factors, including more workers, three of them being members of the Casamassima family, and longer hours of work at the stand. The court did not regard the income approach as suitable in evaluating this property since it was not truly a rental but rather a franchise arrangement. In appraising the damage, no weight was given to the income tax figures introduced into evidence. The court accepted as a fact, substantiated by experts on both sides, that land values in the area were rising at the taking date.
In order for a soft ice cream stand .such as that maintained and operated by the claimants to be successful, it must attract motorists by offering to them not only merchandise they will buy but also a place to park their vehicles easily while they make their purchases and consume the product as the majority *684 do before traveling further. It is more likely that the approaching motorist will stop if he sees parking space is available for him. Claimants’ loss of this readily viewed front parking space therefore is a consequential damage to the remainder, even if the court were to accept the State’s engineering expert’s feasibility study of the number of cars which the plot could accommodate. The study concluded that the number of cars to be accommodated before and after the taking as being almost the same. A road view of the plot after the appropriation does not appear to offer the same likelihood of quick and ready accommodation for cars as before the taking.
Claimants’ arrangement with the corporation whose product they vend has been renewed since the State’s taking and thus the taking did not affect the franchise and no part of the damage awarded relates to it. Though the property was used to vend a particular product, it could also be used both before and after the taking for many other roadside vending purposes, although the machine room might need alteration. The court has not considered the property a specialty and has given weight to Bensle v. State of New York (24 A D 2d 1052 [1965]).
The court has viewed the property and the comparables submitted by the two appraisers. It has weighed all the evidence, giving proper considertaion to the testimony of the experts, but arriving at its determination independent of their valuations, and on the basis of its viewing of the property and the comparables. The court finds the market data approach more applicable on the facts of the instant situation in which, though there purported to be a lease, what actually existed was a franchise situation on claimants’ own property.
The court finds the before-value to have been $2 per square foot for the land and the total before-value to have been $52,836. The direct damage from the taking of 1,248 square feet of land is $2,496. The on-site improvements taken were damaged to the extent of $400. The total direct damage is $2,896.
The remaining property was consequentially damaged in the amount of $5,600. It now has less front space, which the State’s appraiser also recognized caused a consequential damage, and also less flexibility of use, and has the drainage difficulty which can be cured at a cost estimated at a few hundred dollars. The total damage was $8,496. No part of the consequential damage awarded was based on loss of access to claimants’ property. The court recognizes mere inconvenience of access as not being compensable. (See Bopp v. State of New York, 19 N Y 2d 368 [1967], citing Selig v. State of New York, 10 N Y 2d 34 [1961], and Northern Lights Shopping Center v. State of New York, *685 15 N Y 2d 688 [1965].) The after-value, of the property the court finds to be $44,340.
The interest allowance awarded recognizes the requirement of subdivision 13 of section 30 of the Highway Law and the proof that on May 16, 1963 the State made an offer of partial payment in the sum of $3,039, which was stated to be 60% of the State’s value for the taking, and that claimants did not acknowledge or accept this offer. The amount of the offer was not considered by the court in its award or as evidence pertinent thereto but merely and solely in relation to the interest to be paid on the award. (See Brummer v. State of New York, 25 A D 2d 245 [1966].)
’ The claimants are awarded the sum of $8,496 for all damages direct and consequential with interest on $8,496 from October 23, 1962 to April 23,1963 and on $5,457 from August 19, 1964 to the date of entry of judgment.