Alexander Del Giorno, J.
Jurisdictionally, the above-entitled proceeding comes before me as a Referee of this court to hear, try and determine the claim herein by consent and agreement of the parties hereto and pursuant to an order of this court dated April 10,1972.
I find and decide as hereinafter set forth.
This is a claim for damages arising from an alleged de facto appropriation of part of claimant’s property and an alleged loss of suitable access caused by a change of grade and construction of curbing and a center mall.
The de facto appropriation arose from the construction by the State of a fence allegedly on claimant’s property. The fence was completed sometime between November 7,1969 and January 4,1970.
The parties stipulated that damages were to be assessed as of October 1,1969 and that the interest on any award granted herein was to be computed from October 1,1969.
*689 The original claim was filed with the Clerk of the Court of Claims on November 10,1969 and with the Attorney-General on November 7,1969. Pursuant to an order of Judge John Carroll Young of this court dated July 21, 1970, claimant was granted permission to file an amended claim. The amended claim was filed with the Clerk of the Court of Claims and with the Attorney-General on August 3,1970.
The contract under which the subject project was completed was accepted by the Commissioner of Transportation on April 23, 1971. Although the claim was filed before the acceptance of the contract under subdivision 15 of section 30 of the Highway Law, such procedure is proper (Reifke v. State of New York, 31 A D 2d 67, affd. 26 N Y 2d 859), and thus I find that the claim was timely filed.
The claim has not been assigned or submitted to any other court or tribunal for audit or determination.
Claimant was owner of the subject property by reason of a deed marked claimant’s Exhibit 6 in evidence.
Prior to the alleged de facto appropriation the subject property consisted of 10,521± sq. ft. on the northeast corner of Erie Boulevard East (also known as Route 5) and Thompson Street (also known as Relocated Thompson Road) in the Village of East Syracuse, Town of DeWitt, Onondaga County. Subject had 83.20± feet of frontage on Erie Boulevard East and 113.18± feet on Thompson Street. However, a strip 7 to 10 feet wide along the entire Thompson Street frontage, and 10 feet along the eastern end of the Erie Boulevard East frontage, were subject to a perpetual easement in favor of the State of New York for the purpose of constructing, reconstructing and maintaining embankments. This easement was imposed over 37 years prior to the instant alleged de facto appropriation. The easement strip contained 871± square feet, but did not interfere with subject’s access to Thompson Street or Erie Boulevard East.
The subject land sloped gradually down from Erie Boulevard East and was approximately five feet below grade at subject’s northern boundary. The property was improved by a one-story restaurant surrounded by a Tarvia parking area. A sketch of the subject property is annexed hereto and marked Appendix “A”.[1]
Erie Boulevard East is a major artery running generally east out of the City of Syracuse. In the vicinity of subject, the property along Erie Boulevard East is highly commercialized with very little land available for future commercial development. *690 Thompson Road (also known as New Thompson Road, also known as Thompson Road Viaduct), intersects Erie Boulevard East approximately 165 feet west of subject and is a heavily traveled road carrying traffic north out of Syracuse. The intersection of Thompson Road and Erie Boulevard East has a traffic light and is one of the highest traffic volume intersections in Onondaga County.
The Town of DeWitt has shown rapid growth in population (27% from 1960 to 1970) and property values (assessed valuation of real property increased 64% from 1961 to 1969) and such growth should continue into the foreseeable future.
The alleged de facto appropriation arose in connection with the construction of an interchange for Interstate Route 690. Prior to the construction, subject was at grade with both Thompson Street and Erie Boulevard East and had completely unrestricted access to both roads, there being no curbing on either road contiguous to subject. Patrons of claimant’s restaurant parked against the north, west and south sides of the building. A center divider separated east and westbound traffic on Erie Boulevard East, but a cut in the divider almost in front of claimant’s building permitted eastbound traffic to turn left into Thompson Street and into the subject.
The new interchange was a four-quadrant cloverleaf with collector roads and was located just northwest of subject where Thompson Road was rebuilt over Interstate 690. Both Thompson Road and Erie Boulevard East were improved and widened in the vicinity of subject. Thompson Street was closed and plowed under. The grade of Erie Boulevard East adjacent to subject was raised 1 to 2 feet and curbing was installed along subject’s entire Erie Boulevard East frontage. However, pursuant to a release signed by claimant, the State constructed a 35-foot wide curb cut and driveway access for subject.[2] The center divider on Erie Boulevard East was rebuilt into an expanded and continuous center mall, with the cut which had permitted eastbound traffic to turn left into Thompson Street and subject being eliminated. As a result, eastbound travelers had to go over a third of a mile past subject, make a U-turn, and enter subject from the westbound lanes of Erie Boulevard East. Finally, in order to segregate subject from the State’s right of way, a six-foot high chain-link fence was constructed along subject’s western boundary adjacent to the former Thompson Street.
*691 Claimant claimed direct damages from a de fuwv appropriation arising from the alleged fact that the fence built along the former Thompson Street boundary was up to 1.14 feet inside the subject property. The State claimed that the fence was not on subject but rather was wholly within the State’s right of way. The burden of showing such an appropriation is on the claimant (Meloon Bronze Foundry v. State of New York, 8 Misc 2d 286, revd. other grounds 6 A D 2d 993), but, after reviewing the evidence, as clarified by my viewing of the property, and after giving proper consideration to the testimony of the experts for both sides, particularly as to the methods and bases upon which the respective parties prepared their surveys, I find that the fence did impinge on the subject property as contended by claimant, thereby resulting in a de facto appropriation of 117± sq. ft. of the land, subject to the New York State perpetual embankment easement.
Claimant claimed consequential damages from loss of access (including, apparently loss of exposure to traffic due to diversion of traffic) and loss of parking space. He contended that the closing of Thompson Street and the construction of the fence adjacent thereto, and the change of grade, installation of the curbing, and closing of the cut in the median divider on Erie Boulevard East, resulted in a loss of access to subject and that the fence, change of grade and curbing resulted in a loss of parking space on subject.
From an analysis of all the evidence I find that claimant did not suffer compensable loss of access, since suitable access remained. The 35-foot curb cut easily provided suitable entry into and exit out of subject in its use as a roadside restaurant. It is true that cars entering subject will have to do so more slowly and make their turns more carefully than before the taking, but I deem such slight inconveniences too insignificant to make the access unsuitable for the subject’s highest and best use.
The street closing, fence construction, curb installation, and divider improvement were all species of reasonable regulation of traffic under the State’s police power, and, since suitable access was left, any damage resulting therefrom was noncompensable. (Jones Beach Blvd. Estate v. Moses, 268 N. Y. 362; Jablowsky v. State of New York, 267 App. Div. 54, affd. 292 N. Y. 652; Matter of Smith v. Gagliardi, 2 Misc 2d 1005, affd. 2 A D 2d 698; Cities Serv. Oil Co. v. City of New York, 5 N Y 2d 110, cert. den. 360 U. S. 934; Northern Lights Shopping Center v. State of New York, 20 AD 2d 415, affd. 15 N Y 2d 688, cert. den. 382 U. S. 826; Bopp v. State of New York, 19 N Y 2d 368; Tucci v. *692 .State of New York, 28 AD 2d 774, affd. 29 NY 2d 836.) Claimant is entitled only to suitable access, not to access along his property’s entire frontage or access to every street which borders his property.- (Kings County Fire Ins. Co. v. Stevens, 101 N. Y. 411; Tucci v. State of New York, supra.) The impairment and reduction of access make entry and egress inconvenient or even difficult and may cause the property to be less desirable and to depreciate in value, but under the laws of this State such individual hardships have been deemed secondary to the general public welfare and any losses sustained thereby are damnum absque injuria. (Matter of Smith v. Gagliardi, supra; Cities Serv. Oil Co. v. City of New York, supra.) That there was an actual direct taking here does not alter the result, since, absent a showing that the access remaining after that taking was unsuitable, no consequential damages for loss of access can. flow therefrom. (Rigano v. State of New York, 38 Mise 2d 480; Sonne v. State of New York, 49 Mise 2d 887; Red Apple Rest v. State of New York, 27 A D 2d 417; Tucci v. State of New York, supra; Penningroth v. State of New York, 35 A D 2d 1024.) Further, since there was no connection between the direct taking and the loss of access to Erie Boulevard East, any liability for damages attributable to such loss cannot be based on the direct taking. (Van Aken v. State of New York, 261 N. Y. 360; Holmes v. State of New York, 279 App. Div. 489, mod. 279 App. Div. 958.) Finally, any damages due to a loss of exposure to traffic resulting from a diversion thereof are clearly noncompensable. (Northern Lights Shopping Center v. State of New York, supra.)
As to damages arising from any loss of access due to change in grade, the court is of the opinion, as a matter of fact, that the change of grade had only an insignificant impact on access, entitling claimant at best to only nominal damages. While a change of grade of up to two feet can have adverse effects on access, here the combination of the layout of subject and the efficacious construction of the driveway by the State made any problems of entry and egress due to the gradual slope of the driveway de minimis. Claimant presented some testimony to the effect that cars scraped their tailpipes in entering and exiting subject (see, Taylor v. State of New York, 32 A D 2d 884), but the State’s contradicting testimony seemed more probative and this together with the photographs of the area and my viewing lead me to find that the driveway access constructed on subject was clearly negotiable and entry into and egress out of subject were not adversely affected by the change of grade.
In addition to a factual absence of damages, however, the court is also cons,trained to conclude that legally the State is free from *693 liability. "Under the circumstances herein, the State’s liability for damages due to change of grade arises derivatively from section 159 of the Village Law as applicable to the State under subdivision 15 of section 30 of the Highway Law. (Askey & Hager v. State of New York, 240 App. Div. 451, affd. 266 N. Y. 587; Knights v. State of New York, 161 Misc. 552, affd. 251 App. Div. 781; Matter of Board of Supervisors of County of Chenango [Bainbridge-Unadilla State Highway], 168 Misc. 407; Hollman v. State of New York, 171 Misc. 768; Mirro v. State of New York, 172 Misc. 963, affd. 260 App. Div. 525, affd. 285 N. Y. 678; Williams v. State of New York, 34 A D 2d 101, and 65 Misc 2d 943.)
There was conflicting evidence as to whether subject and the section of Brie Boulevard adjacent to it were within a village, the Village of East Syracuse, or a town, the Town of DeWitt. Claimant introduced a tax map showing subject and the contiguous section of Erie Boulevard East within the Village of East Syracuse, while the State introduced a zoning map showing the front of subject and all of Erie Boulevard East outside of the Village of East Syracuse and in the Town of DeWitt. I deem the tax map to be more accurate and to take precedence over the zoning map and find subject and the contiguous section of Erie Boulevard East to be within the Village of East Syracuse. The necessity for my making this apparently superfluous finding arises from the derivative nature of the State’s liability for purely change of grade damages and the anomalous results it produces. The common-law rule was, and still is, that absent statutory authority, the State is not liable for change of grade damages not part of a direct taking (Sauer v. City of New York, 180 N. Y. 27, mod. 181 N. Y. 521, mot. for rearg. den.. 182 NT. Y. 511, affd. 206 U. S. 535; Beck Props. v. State of New York, 184 Misc. 148; Katonah Lbr. Coal & Feed Co. v. State of New York, 194 Misc. 311; Bennett v. State of New York, 284 App. Div. 828; Raymond v. State of New York, 4 A D 2d 62, affd. 4 N Y 2d 961; Meloon Bronze Foundry v. State of New York, 8 Misc 2d 286, revd. other grounds 6 A D 2d 993, supra). There is no statute directly authorizing liability against the State for pure change of grade damages but such liability is found under general damage statutes, such as subdivision 15 of section 30 of the Highway Law, where there is a pre-existing local statutory liability. However, local statutory authorization for .such damages has only been promulgated for cities and villages, under general statutes such as section 159 of the Village Law and sections 99 and 101 of the Second Class Cities Law as well as under various *694 particular local laws (e.g., New York City Charter). No such authority exists for towns or other rural areas. The anomaly of this situation has been commented upon (see, e.g., Bennett v. State of New York, supra; Raymond v. State of New York, supra), but as yet the Legislature has not seen fit to correct this inequity.
The problem in the instant case, however, is that the State appears to fall within an exculpatory provision in the local enabling statute. The Village Law (§ 159, subd. 2, last unnumbered paragraph) provides: ‘ ‘ This subdivision shall not apply to the change of grade of streets, highways or bridges by village authorities nor to the change of grade, made by the state, of a bridge or state highway, which is under the exclusive control, supervision or jurisdiction of the state, nor to the change of grade, made by a county, of a bridge or county highway, which is under the exclusive control, supervision or jurisdiction of the county.”
Erie Boulevard East is denominated Route 5 and there was evidence indicating it was a State highway. Absent evidence that it was not under the State’s exclusive “ control, supervision or jurisdiction ” (and thereby outside the purview of the exculpatory clause of subdivision 2 of section 159 of the Village Law, the court is left no choice but to assume that Erie Boulevard East is a State highway within the exempting clause of subdivision 2 of section 159 and that the instant change of grade is not within the liability imposed by the Village Law. (See dissent in Williams v. State of New York, 34 A D 2d 101, 105-108, supra.) Therefore, the common-law rule applies and, without any other applicable statutory authoriziation, the State must be deemed legally immune from any damages arising from the change of grade herein.
As to damages arising from an alleged loss of parking space, the court is able to discern a potential loss of parking, only on the westerly and front parts of subject. The conjunction of the closing of Thompson Street, the construction of the fence and the modification of subject’s access have created problems along the west ¡side of the building on subject. While cars parking on the westerly part of subject must now park against the fence instead of against the building, it appears that the same number of cars can be parked against the fence as formerly parked against the building and still leave from 10 to 15 feet between the parked cars and the building (depending on the length of the cars and whether they are parked diagonally or head on against the fence). However, this 10 to 15 feet does not appear adequate to allow convenient and facile parking and entry into and exit *695 from subject’s rear parking area (cars passing simultaneously in opposite directions coming into and out of the rear parking area could have a very tight squeeze). Claimant has the choice of enduring troublesome traffic congestion in this area or sacrificing some parking spaces by allowing only parallel parking along the fence contiguous to the southwest corner of the building. Under either choice claimant will suffer damage in his use of the property.
An argument against allowing recovery for such damage is that, had the fence been constructed 1.14± feet further west, such damage would have been noncompensable, under the rule absolving the State from liability for damages from acts constituting reasonable traffic regulation where suitable access is left (see p. 692 and p. 693, and cases cited thereon). The premise underlying this argument is that these damages are attributable only to reasonable traffic regulation and not to the direct taking of a mere 1.14± feet. A further, and to the court, decisive argument against permitting recovery for such damage is the fact that claimant has failed to segregate this consequential damage arising from the direct taking from the other alleged consequential damages arising from the street closing, curbing installation, grade change and divider cut elimination. This failure leaves the court with no basis upon which to apportion the damages into compensable and noncompensable elements and any attempt on our part to do so would be pure speculation. Thus the court is constrained to deny recovery for damage arising from loss of parking space on the westerly part of subject due to a failure of proof of damages.
Any damage resulting from the loss of parking spaces in the front pf subject is also not compensable although for different reasons than those given above with respect to the westerly part of subject. The court notes that loss of frontal parking space can result in significant damages (see Casamassima v. State of New York, 53 Misc 2d 680), but finds that here such loss was due solely to the installation of curbing and, since this was a reasonable traffic regulation and suitable access remains, the general rule cited above (pp. 692 and 693) precludes awarding damages therefor. The court further notes that apparently the parking in front of subject prior to the taking was possible only by partially encroaching on the State’s right of way on Brie Boulevard East and by engaging in dangerous and illegal driving maneuvers, i.e., backing onto Erie Boulevard East. Claimant certainly cannot be heard to complain of being deprived of such parking by the State’s reasonable and in this case prudent use of its property.
*696 The remaining question is valuation of subject. Subject was zoned as a “ Land Conservation District ” which generally prohibited the construction of any improvements. However, claimant’s restaurant apparently predated the applicable zoning regulations and thus subsisted as a legal nonconforming use. In any event, the appraisers for both sides agreed that a zoning change or variance for commercial use could be very easily obtained, as the Village of East Syracuse was apparently anxious to have such land utilized productively. I thus agree with the State’s appraiser and find that the highest and best use of subject before and after the taking was commercial, including food service facilities. Claimant’s appraiser, while finding subject’s before taking use to be its present use as a drive-in fast food restaurant with off-street parking (a use encompassed by and consistent with the court’s finding), contended that such use after the taking was restricted by unsuitable restricted ingress and egress. The court cannot agree with such a contention, in view of its finding above that subject’s access was suitable after the taking and, while subject was not as valuable after the de facto appropriation and its allied construction, the changes wrought by such appropriation and construction were not sufficient to change subject’s highest and best use.
Claimant’s appraiser used the income approach to value subject, with the cost approach as a check.[3] Assuming a de facto appropriation, he found subject to have a value before taking of $148,800 on the basis of $100,900 for land ($96,500 for 9,650 sq. ft. of unencumbered land at $10 per sq. ft. and $4,400 [r.o.] for 871 sq. ft. of land encumbered by embankment easement at $5 per sq. ft.), and $47,900 for improvements; and a value after taking of $73,900 on the basis'of $62,700 for land ($60,300 [r.o.] for 9,650 sq. ft. of unencumbered land at $6.25 per sq. ft. and $2,400 [r.o.] for 754 sq. ft. of land encumbered by embankment easement at $3,125 per sq. ft.) and $11,200 for improvements ; with the resulting damages of $74,900 being divided into $600 [r.o.] direct damages (117 sq. ft. of land encumbered by embankment easement at $5 per sq. ft.) and $74,300 [r.o.] consequential damages ($36,187 for 9,650 sq. ft. of unencumbered land at $3.75 per sq. ft., $1,414 for 754 sq. ft. of land encumbered by embankment easement at $1,875 per sq. ft. and $36,700 for improvements). Assuming no de facto appropriation, claimant found the before value of subject to be the same, $148,800, but set the after value- at $74,000 on the basis of $63,000 for land ($60,300 *697 [r.o.] for unencumbered land and $2,700 [r.o.] for 871 sq. ft. of land subject to embankment easement at $3.125 per sq. ft.) and $11,000 for improvements, with the resulting damages being $74,800.[4]
The State’s appraiser used an income approach (primary-economic approach using building residual) to value the land and building and a reproduction cost less depreciation method to value the fixtures. The court notes that the so-called unit rule of valuation for fixtures (wherein fixtures are valued as part of the realty and not separately) is only one of several alternative methods of valuing fixtures and that, depending on circumstances, evidence of reproduction cost less depreciation is admissible on the issue of the value of fixtures (and in some cases acceptable as the sole determinant thereof). (Matter of City of New York [Blackwell’s Is. Bridge], 198 N. Y. 84; Banner Milling Co. v. State of New York, 240 N. Y. 533, cert. den. 269 U. S. 582; Marraro v. State of New York, 12- N Y 2d 285.) Under the instant circumstances, however, the use of the cost less depreciation method is improper, since not only are the fixtures owned by the fee owner of the realty (a situation expressly not included in the exposition of the applicability of reproduction cost less depreciation evidence in the valuation of fixtures in Marraro v. State of New York, supra), but also because the State’s appraiser valued the building improvements by means of an income capitalization approach which was presumably based on a gross rent derived from the use of realty, building and fixtures. (City of Binghamton v. Rosefsky, 29 A D 2d 820; Matter of County of Nassau [Merrick Road], 56 Misc 2d 270.) Thus not only did the State’s method result in an improper separate valuation of the fixtures, but also in a wrongful double valuation of them, and therefore little, if any, weight can be accorded the State’s, separate fixture evaluation.
The State’s appraiser found the value of the subject property before the taking to be $58,974 on the basis of ..$33,300 (r.o.) for land (83.2 front feet at $400 per front foot), $700 for land improvements, $15,500 for building improvements and $9,474 for fixtures. He .set the after value at $38,237 on the basis of $25,000 for land (83.2 front feet at $300 per front foot), $700 for land improvements, $7,800 (r.o.) for building improvements *698 (50% reduction) and $4,735 for fixtures (50% reduction). The difference of $20,737 (which the State contended was noncompensable damage) was all denominated consequential damage and was divided into $8,300 (r.o) for land (83.2 front feet at $100 per front foot), $7,700 for building' improvements and $4,737 for fixtures.
Although the court would have preferred to utilize the market data approach and evaluate subject on the basis of whole to whole comparable sales, apparently such sales were not available and thus the court is constrained to rely on the income approaches of the parties’ appraisers. Claimant’s appraiser used two comparable sales to value vacant land and three comparable rentals (Rentals No. 1 and 2 for before the taking and Rental No. 3 for after the taking) to value improvements. The vacant land sales were reasonably comparable, although Sale No. 1 had a slightly different use (gas station as opposed to restaurant use) and Sale No. 2 was partially on a one way street and near a shopping center. However, the sales were not properly adjusted, with such downward adjustments as those for size and location being insufficient (Sale No. 2 had a plus adjustment for location which was excessive). Additionally, the purchaser in Sale No. 1 bought the property in order to provide for the replacement of a gas station that had been appropriated by the State and thus there should have been a downward adjustment for motivation. Claimant’s rentals were also reasonably comparable, although the two before rentals (Rental No. 1 and No. 2) had provisions in their leases requiring the lessor to construct a specified building on the property. However, the adjusted before rental value seemed excessive. The size adjustments appeared insufficient for the two before rentals and improper for the after rental (Rental No. 3 was given the same downward adjustment as Rentals No. 1 and No. 2 even though the former was smaller than subject while the latter were larger than subject). Also adjustments for time were not consistently applied.
The State’s appraiser used three comparable sales to value the vacant land and three rentals to value improvements. The vacant land sales were reasonably comparable, except for Sale No. 1 which was almost 15 times larger than subject. The size adjustments for Sales No. 2 and No. 3 were grossly excessive and the time adjustments were inconsistently applied, resulting in an inadequate net adjustment for Sales No. 1 and No. 2. The rentals were reasonably comparable although Rental No. 1 involved a building almost three times as large as subject and a sublease the rental of which was a third greater than the rental *699 set under the rental’s main lease. The most significant error in the State’s appraiser’s adjustments of these rentals was his failure to make any adjustment for time. This resulted in an inadequate valuation of the improvements since the two more comparable rentals (Rentals No. 2 and No. 3) were both approximately three and a half years prior to the alleged de facto appropriation.
Based upon the foregoing, my viewing of the property and all the evidence and testimony adduced at trial, I find as follows: I find the value of the subject property to be $92,650 before the taking and $59,650 after the taking. Of the resulting damages of $33,000, only $350 was compensable damage, being direct damage attributable to the de facto appropriation of 117± square feet by the State’s fence. The remaining damages of $32,6bU were noncompensable, because they arose from limitations of access (claimant being left with suitable access), change of grade, and traffic control attributable to reasonable and appropriate traffic regulations.
Little weight was given to the State’s claim that the appropriation resulted in greater visibility for subject since, while the appropriation gave subject greater identity as viewed from New Thompson Road and from Erie Boulevard East west of subject, the fact that subject was directly accessible only to westbound traffic negated any benefits derived from this enhanced visibility to eastbound traffic.
The arithmetic breakdown of my findings is as follows:
VALUE BEFORE TAKING: Land (9,650* sq. ft. at 36.00/sq. ft.)............................ $57,900 Encumbered land (871 * sq. ft. at $3.00/sq. ft.).................. 2,600 (r.o.) Improvements................................................ 32,150 (r.o.) $92,650 VALUE AFTER TAKING. Land (9,650* sq. ft. at $4.00/sq. ft.)..;......................... $38,600 Encumbered land (754* sq. ft. at $2.00/sq. ft.).................. 1,500 (r.o.) Improvements................................................ 19,550 (r.o.) $59,650
The before and after value of improvements were derived from the following income computations:
VALUE BEFORE TAKING. Gross income (1,884* sq. ft. at $5.00/sq. ft.).;;:................. $9,420 Vacancy loss (5%)............................................ 471 Effective gross income......................................... $8,949
*700 Expenses Insurance.......................................... $400 Repairs........................................... 300 Taxe.s............................................ 800 Management (3%)................................. 300 (r.o.) $1,800 Net income.................................................. $7,149 Income attributable to land ($60,600 at 6.5%).................... 3,933 Income attributable to improvements............................ $3,216 Improvements value ($3,216/10%)........:...................... 32,160 Land value................................................. 60,500 TOTAL VALUE $92,660 VALUE AFTER TAKING Gross income (1,884± sq. ft. at $3.50/ sq. ft.)...............:..... $6,594 Vacancy loss (5%)............................................ 330 Effective gross income......................................... $6,264 Expenses ■Insurance................ $400 Repairs.................... 300 Taxes............ 800 Management (3%).......... 200 (r.o.) $1,700 Net income............................................... $4,664 Income attributable to land ($40,100 at 6.5%)........•............ ' 2,607 Income attributable to improvements............................ $1,957 Improvements value ($1,957/10%)............................... 19,570 Land value................................................... 40,100 $59,670
The total damage of $33,000 is divided as follows:
COMPENSABLE DIRECT Encumbered land (117 ± sq. ft. at $3.00/sq. ft.)................ $350 (r.o.) CONSEQUENTIAL.............................................. 0 TOTAL....................................................... $350 NONCOMPENSABLE DIRECT.;..................................................... 0 CONSEQUENTIAL Land (9,650± sq. ft. at $2.00/sq. ft.)........................... $19,300 Encumbered land (754± sq. ft. at $1.00/sq. ft.)................ 750 (r.o.) Improvements.............................................. 12,600 total....................................................... $32,650
Both sides have waived the filing of findings of fact and conclusions of law.
*701 All motions made at trial "but not ruled on are now denied.
I have viewed the property.
Claimant is entitled to an award in the sum of $350 for all damages, direct and consequential, with interest thereon from October 1,1969 to the date of entry of judgment herein.

. Omitted from publication.

. Claimant contended the curb cut was only 10 feet but the evidence was clearly to the contrary. It should also be noted that the said release only released the State from claims arising out of the construction of the driveway access.

. He listed a cost to cure of $102,213 but apparently did not use this method in his final assessment of damages.

. Claimant’s appraisal listed the damages as $75,100 for the no de facto appropriation assumption, but this figure was based on a computational error— claimant’s appraiser used $62,700 as an after land value rather than the correct figure of $63,000 and thus obtained an erroneous total after value of $73,700 instead of $74,000 thereby giving him an erroneous damage figure of $75,100 instead of $74,800.