Marvin JOHNSON, et al., Appellants,

v.

CITY OF PLYMOUTH, Respondent.

No. 47651.

Supreme Court of Minnesota.

Jan. 20, 1978.

Rehearing Denied March 29, 1978.

Miller, Neary & Zins and Joseph M. Goldberg and John (Jack) M. Miller, Minneapolis, for appellants.

LeFevere, Lefler, Pearson, O'Brien & Drawz, and Herbert P. Lefler, Minneapolis, for respondent.

Heard before ROGOSHESKE, TODD, and WAHL, JJ., and considered and decided by the court en banc.

TODD, Justice.

Marvin Johnson and Medicine Lake Bus Company, a Minnesota corporation, (appellants) own Lot 1 and Lot 2, Block 1, of the Glen Erie Addition in the city of Plymouth, Minnesota. The property is bounded on the north by 36th Avenue North and on the east by Kilmer Lane. A curb and gutter was installed on Kilmer Lane in 1969, regulating vehicular access to appellants' property. This action for damages was instituted against the city of Plymouth on the theory that the city had infringed appellants' property rights without awarding just compensation therefor. Pursuant to an agreement between the parties, the liability and damage issues were separated for trial. The court below considered the liability question only and held the city not liable. We affirm.

This matter was submitted to the trial court on a set of stipulated facts, the pertinent portions of which are reproduced below:

"1. Plaintiff, Medicine Lake Bus Company, is a Minnesota corporation of which Plaintiff, Marvin Johnson, is the principal owner.

"2. Defendant is a Minnesota municipal corporation.

"3. Plaintiffs are the sole owners of all the real property interest in Lots 1 and 2, Block 1, Glen Erie Addition, Hennepin County, Minnesota, otherwise known and numbered as 9625 36th Avenue North, Plymouth, Minnesota.

"4. Plaintiffs acquired the above-described property in 1962 and ever since that date have continuously used the property for the commercial purpose of operating a bus company.

"5. Kilmer Lane and 36th Avenue North, at all times relevant herein, were and are public thoroughfares within the City of Plymouth.

*     *     *     *     *     *

"7. When Plaintiffs acquired said property in 1962 there were no curbs, gutters or sidewalks on either 36th Avenue North or Kilmer Lane and the buses owned by Plaintiffs had access to and in fact entered the property from both of said streets at any and all points without restriction.

"8. In 1967 curb and gutter was installed on 36th Avenue North pursuant to a street improvement proceeding which was petitioned for by Plaintiffs and others. In 1969 curb and gutter was installed on Kilmer Lane pursuant to a street improvement petition of various parties not including Plaintiffs. Plaintiff Marvin Johnson attended the public hearing on the improvement and expressed his opposition to it. Sidewalk was installed on 36th Avenue North adjacent to Plaintiffs' property in 1974. Plaintiffs first gained knowledge of the location of curbing and cuts on Kilmer Lane at the time of the actual installation of the curbing and curb cuts on Kilmer Lane. At the time of this installation, Plaintiff Marvin Johnson expressed to Defendant's consulting engineer in charge of the operation his opposition to the placement and

width of the curb cuts,[1] stating that they were not adequate for his use.

\*   \*   \*   \*   \*   \*

"10. The installation of the curbs, gutters and sidewalk as referred to above [was] done pursuant to public improvement proceedings under Chapter 429, Minnesota Statutes, and such proceedings were in all respects legal and proper with reference to the requirements of Chapter 429. Assessments to pay for the cost of such improvements were levied against benefited properties, including the property of Plaintiffs, and were paid in full without appeal by all property owners so assessed. Plaintiffs' action in paying the assessment was not intended to constitute a waiver of claims arising out of the installation of curbing and curb cuts on Kilmer Lane, but rather was for the sole purpose of keeping his accounts with Defendant current.

"11. Within six months following the installation of the curb and gutter on Kilmer Lane, Plaintiffs placed bituminous material between the top of the curb line of Kilmer Lane and the surface of the street which permitted Plaintiffs' buses to enter onto and exit from their property at any point on the street rather than to and from driveways between the curb cuts.

"12. The Defendant has regularly maintained Kilmer Lane from 1969 to date including, but not limited to, snowplowing, street cleaning, etc.

"13. On or about October 1, 1974, the present city engineer of the Defendant was advised of the presence of such bituminous material and requested Plaintiffs to remove it. When Plaintiffs failed to do so, employees of the Defendant removed the material and restored the curb line.

"14. Plaintiffs claim that the installation of the curb and gutter and curb cuts by Defendant resulted in an impairment of access to their property without due process of law and seek to require Defendant to condemn such access by eminent domain proceedings or, in the alternative, to pay money damages.

\*   \*   \*   \*   \*   \*

"16. Without prejudice to Defendant to hereafter deny the nature and extent of damages to Plaintiffs' property, if any, it is agreed by the parties that for the limited purposes of determining the legal issues raised by the above stipulated facts, such damages by way of impairment of access may be regarded by the Court as substantial."

The trial court found that the construction by the city of the curb and gutter along Kilmer Lane was a valid exercise of the city's police power and therefore did not constitute a compensable taking of private property. The issue presented on appeal is whether the installation of curb and gutter so restricted the right of access to appellants' property as to require compensation under the Minnesota Constitution.

Minn.Const. art. 1, § 13, provides that "[p]rivate property shall not be taken, destroyed or damaged for public use without just compensation \* \* \*." This constitutional provision imposes a condition on the exercise of the state's inherent supremacy over private property rights. To be constitutionally compensable, the taking or damage need not occur in a strictly physical sense and can arise out of any interference by the state with the ownership, possession, enjoyment, or value of private property. See, *Burger v. City of St. Paul*, 241 Minn. 285, 293, 64 N.W.2d 73, 78 (1954); 2 Nichols, Eminent Domain, (3 ed.rev.) §§ 6.1, 6.3.

It is well settled under Minnesota law that property owners have a right of "reasonably convenient and suitable access" to a public street or highway which abuts their property. This right is in the nature of a property right. See, *Hendrickson v. State*, 267 Minn. 436, 446, 127 N.W.2d 165,

---

1. A "curb cut" is a gap in the concrete curbing along a public street designed to allow a driveway to connect the property with the street.

173 (1964); *State, by Mondale, v. Gannons Inc.*, 275 Minn. 14, 145 N.W.2d 321 (1966); *State, by Mattson, v. Prow's Motel, Inc.*, 285 Minn. 1, 171 N.W.2d 83 (1969); *Johnson Bros. Grocery v. State, Dept. of Highways*, 304 Minn. 75, 229 N.W.2d 504 (1975). Like other property rights, the right of reasonable access can be infringed or "taken" by the state, giving the property owner a constitutional right to compensation.

Courts have long struggled with the notion of reasonable access and the compensable "taking" thereof. In so doing, they have adopted labels for the results they have reached which even today generate substantial linguistic and analytical confusion. Thus, if a governmental action has been found not to infringe the right of access, such action has been deemed a "reasonable" assertion of the police power and therefore noncompensable.[2] On the other hand, where courts have determined that official action has eliminated a right of access, the action has been characterized as a constitutional "taking."[3] The result has been the creation of an unfortunate rhetorical device: Reasonable assertions of the police power are not compensable but the "taking" of a reasonable right of access is compensable. There is an obvious difficulty, however, with any attempted application of this statement as a rule of law. The statement itself provides no principled means for distinguishing a due process "taking" from a noncompensable exercise of police powers.

It seems apparent to us that the implementation of any improvement project on a public thoroughfare is undertaken in the interest of the public safety and welfare pursuant to inherent governmental police powers. At the same time, however, the exercise of such powers can operate to deny an abutting property owner the right of reasonable access which this court has frequently recognized. As we observed in *Hendrickson v. State*, 267 Minn. 436, 441, 127 N.W.2d 165, 170:

"* * * While courts have assumed that designating a regulation an exercise of police power prevents compensation by eminent domain proceedings, for practical purposes *this is simply a convenient way of describing which activities confer a right to damages and which do not.* The prohibiting or limiting of access to a highway may well be an exercise of police power in the sense that it is designed to promote public safety, but at the same time it may cause compensable injury to an abutting owner." (Italics supplied.)

The relationship between the state's police powers and the property owner's right to compensation was discussed in more general terms in *State ex rel. Lachtman v. Houghton*, 134 Minn. 226, 230, 158 N.W. 1017, 1019 (1916):

"* * * The dividing line between restrictions which may be lawfully imposed under the police power and those which invade the rights secured to the property owner by the constitutional provisions that his property shall not be taken or damaged without compensation, nor he be deprived of it without due process of law, has never been distinctly marked out, and probably cannot be. As different cases arise, the courts determine from the facts and circumstances of the particular case whether it falls upon one side or the other of the line."

The court further stated:

"The police power of the state is very broad, but not without limits. Under it the legislative power may impose any reasonable restrictions and may make any reasonable regulations, in respect to the use which the owner may make of his property, which tend to promote the general well-being or to secure to others that

---

**2.** For example, in *Gibson v. Commissioner of Highways*, 287 Minn. 495, 500, 178 N.W.2d 727, 730 (1970), this court said: "* * * The right to control access is an exercise of the state's inherent police power which, if reasonably asserted, does not give a property owner the right to compensation * * *."

**3.** E. g., see, *Johnson Bros. Grocery v. State, Dept. of Highways*, 304 Minn. 75, 229 N.W.2d 504 (1975).

use and enjoyment of their own property to which they are lawfully entitled; but when the legislative power attempts to forbid the owner from making a use of his property which is not harmful to the public and does not interfere with the rightful use and enjoyment of their own property by others, it invades property rights secured to the owner by both the state and Federal Constitutions. Only such use of property as may produce injurious consequences, or infringe the lawful rights of others, can be prohibited without violating the constitutional provisions that the owner shall not be deprived of his property without due process of law nor without compensation therefor first paid or secured." (134 Minn. 237, 158 N.W. 1021.)

■ In the present case, therefore, the operative question is not whether the city of Plymouth exercised its police powers in a reasonable fashion by upgrading Kilmer Lane but rather whether the city's admittedly legitimate police power action unduly restricted vehicular access to the subject property and thereby deprived appellants of their right of reasonable access.

What constitutes reasonable access must, of course, depend to some extent on the nature of the property under consideration. The existence of reasonable access is thus a question of fact to be determined in light of the circumstances peculiar to each case. See, *Antonelli v. Planning Bd. of Waldwick*, 77 N.J.Super. 119, 185 A.2d 431 (1962); *Newman v. Mayor of City of Newport*, 73 R.I. 385, 57 A.2d 173 (1948). The curb cuts actually constructed by the city of Plymouth to provide access to appellants' property appear to be generous and were quite plainly designed with the commercial use of appellants' property in mind. The north

side of the property is served by a driveway and curb cut approximately 65 feet wide. On the Kilmer Lane side there are three curb cuts along the property's 275-foot boundary. One cut of approximately 22 feet serves the parking area behind the headquarters and maintenance building. A second cut 70 feet wide is aligned with the garage doors which face Kilmer Lane. The third cut is roughly 52 feet wide and serves the fuel pump area in the northeast corner of the property. In sum, we find that access to plaintiffs' property is available along approximately 144 feet of the 275-foot frontage on Kilmer Lane.

On these facts, we cannot agree that reasonable access to appellants' property has been denied by the city. At oral argument, counsel for appellants stated that the northern-most and the southern-most curb cuts on Kilmer Lane are too narrow to allow appellants' buses to enter from the routes most convenient for them. We note, however, that the imposition of even substantial inconvenience has not been considered tantamount to a denial of the right of reasonable access.[4] See *Delta Rent-A-Car Systems, Inc. v. City of Beverly Hills*, 1 Cal.App.3d 781, 82 Cal.Rptr. 318 (1969); *Dumala v. State*, 72 Misc.2d 687, 340 N.Y.S.2d 515 (Ct.Cl.1973); see, also, *Oregon Investment Co. v. Schrunk*, 242 Or. 63, 408 P.2d 89 (1965); *City of San Antonio v. Pigeonhole Parking of Texas*, 158 Tex. 318, 311 S.W.2d 218 (1958); *Wood v. City of Richmond*, 148 Va. 400, 138 S.E. 560 (1927); *City of Miami v. Girtman*, 104 So.2d 62 (Fla.App.1958).[5] We conclude, therefore, that the curb cuts linking appellants' property with Kilmer Lane did not so interfere with access to the property as to be deemed a "taking" of private property within the purview of Minn.Const. art. 1, § 13.

---

**4.** Also, it is apparent that appellants had full knowledge of the city's intention to upgrade Kilmer Lane before construction was even begun. Yet, appellants appear to have made no effort to communicate their special needs to the city engineer's office until the project design was complete and construction was well under way. See, stipulation of fact No. 8, *supra*.

**5.** For a more general discussion of the right of access and governmental infringement thereof, see, 1A Antieau, Municipal Corporation Law, §§ 9.42 to 9.44; 10 McQuillin, Municipal Corporations (1966 rev.vol.) §§ 30.63 to 30.64. See, also, *City of Phoenix v. Wade*, 5 Ariz.App. 505, 428 P.2d 450 (1967); *Ben Lomond, Inc. v. City of Idaho Falls*, 92 Idaho 595, 448 P.2d 209 (1968).

■ As a final matter, our decision in *The Alexander Co. v. City of Owatonna*, 222 Minn. 312, 24 N.W.2d 244 (1946), was the subject of much discussion on this appeal and warrants brief comment. In that case, the owner of a commercial building in downtown Owatonna was remodeling the building to permit the operation of a Firestone automobile service store. The nature of the business required access for automobiles to and from the adjacent street, but at the time of the remodeling, the building was entirely without such access. The owner received permission from the city engineer to make a curb cut, but the city council rescinded this action and subsequently refused to allow the curb cut. Ultimately, this court upheld the action of the council and ruled that the property owner was not entitled to compensation on the theory that the welfare of pedestrians in the downtown area justified the exercise of the council's police power. In light of the foregoing discussion, we think the majority opinion in the *Alexander* case erroneously failed to consider whether the council's action operated to deny reasonable access to the property in question. The correct rule of law was stated in the dissenting opinion as follows (222 Minn. 335, 24 N.W.2d at 257):

"While it is said that the right of access may be regulated by public authority, that does not mean, as the text cited shows [25 Am.Jur., Highways, § 154] that under the guise of regulation the right may be taken away from the owner. The power to regulate the right of access does not include that of taking it. * * *

* * * * * *

"* * * If there is to be a denial of plaintiff's right of access, it should be the result of a compensated taking under condemnation and not an uncompensated one under the guise of a police regulation."

The judgment of the trial court is affirmed, and the decision in *The Alexander Co. v. City of Owatonna, supra,* to the extent it is inconsistent with the opinion expressed herein, is overruled.

Affirmed.

SHERAN, C. J., and PETERSON, J., took no part in the consideration or decision of this case.