COUNTY OF ANOKA, State of Minnesota, Petitioner, Respondent,

v.

Karim ESMAILZADEH, et al., Lower Court Respondents,

and

Finaserve, Inc., Appellant.

No. C9–92–1668.

Court of Appeals of Minnesota.

March 30, 1993.

Review Denied May 28, 1993.

Robert M. Johnson, Anoka County Atty., Daniel A. Klint, Asst. Anoka County Atty., Anoka, Hubert H. Humphrey, III, Atty. Gen., Lloyd J. Moosbrugger, Asst. Atty. Gen., Gordon L. Moore, III, Sp. Asst. Atty. Gen., St. Paul, for respondents.

John F. Bannigan, Jr., James J. Hanton, Bannigan & Kelly, P.A., St. Paul, for appellant.

Considered and decided by SCHUMACHER, P.J., and LANSING and HARTEN, JJ.

## OPINION

HARTEN, Judge.

In this eminent domain proceeding, appellant Finaserve, Inc. challenges a trial court judgment that Finaserve is not entitled to compensation from respondent County of Anoka for loss of access caused by a construction project at the intersection of two roadways abutting Finaserve's property on the north and east. We reverse and remand.

## FACTS

On November 7, 1988, Anoka initiated this action pursuant to Minn.Stat. § 117.-042 (1988). Anoka acquired right-of-way and temporary construction easements to improve the intersection of Central Avenue, also known as State Trunk Highway No. 65 (Highway 65), and 109th Avenue Northeast, also known as County State Aid Highway No. 12 (CSAH 12), in Blaine. On February 28, 1989, the court-appointed commissioners awarded $3,000 damages to Kunz Oil Company, the owner of parcel 6, which is located in the southwest quadrant of the intersection of CSAH 12 and Highway 65. On March 23, 1989, Kunz perfected its right of appeal from the commissioners' award. Finaserve subsequently was substituted for Kunz as the real party in interest.

Continuously since 1959, parcel 6 has been the site of a gasoline station and convenience store. When this road project began, Highway 65 was a north-south limited-access divided highway and CSAH 12 was an east-west undivided four-lane highway. It is undisputed that the majority of customers patronizing the business on parcel 6 emanated from Highway 65.

The construction created turn lanes on CSAH 12 for left turns from eastbound CSAH 12 onto northbound Highway 65 and from westbound CSAH 12 onto southbound Highway 65.[1] The installation of the left turn lanes did not alter access to parcel 6.

Prior to the construction, direct access to parcel 6 was from eastbound CSAH 12 via a right turn at a point west of the intersection of CSAH 12 and Highway 65. The only direct access to Highway 65 from parcel 6 was a right turn onto Highway 65 at a point south of the intersection of CSAH 12 and Highway 65. This access onto High-

---

1. A 242 square foot triangular piece of the northeast corner of parcel 6 was taken by Ano-

ka in condemnation as part of the widening of CSAH 12 at the intersection.

way 65 is an exit only. Traffic from both northbound and southbound Highway 65 had access to westbound CSAH 12 by executing left and right turns respectively. Once on westbound CSAH 12, the Highway 65 traffic could turn left across the eastbound lane of CSAH 12 and into parcel 6 on its northern boundary. The controversy before this court arose from the installation of dividing medians on CSAH 12. The new CSAH 12 medians run 400 feet to the east and 400 feet to the west from the intersection with Highway 65.

Now, the new median on CSAH 12 on the west side of the intersection prevents left turns from westbound CSAH 12 directly into parcel 6. Traffic originating from both northbound and southbound Highway 65, after turning onto CSAH 12, is required to drive 400 feet to the end of the median, make a U-turn onto eastbound CSAH 12, and return to the east in order to make a right turn into parcel 6.

Finaserve submitted uncontroverted evidence that the required U-turn maneuver is difficult, if not impossible as a practical matter, for a variety of large motor vehicles and motor vehicles with trailers.[2] Accordingly, the issue before this court is whether Finaserve has suffered a compensable loss of reasonable access from Highway 65.

Finaserve's appeal from the commissioners' award was tried to the court on March 2, 1992. On May 14, 1992, the trial court filed findings of fact, conclusions of law and order for judgment in which it concluded that:

> [Finaserve's] right of vehicular access was not unduly restricted by the median installation or the permanent taking because [Finaserve] retained its right of reasonably convenient and suitable access to CSAH 12 and Highway 65.

Finaserve moved for a new trial or amended findings. The trial court denied Finaserve's motions and judgment was entered pursuant to the trial court's previous order. Finaserve appeals. This court granted the Minnesota Commissioner of

Transportation leave to file an amicus brief.

## ISSUE

Did the trial court err in deciding that Finaserve had not suffered a compensable loss of its right to reasonable access to CSAH 12 and Highway 65?

## ANALYSIS

■ Article 1, section 13 of the Minnesota Constitution requires that just compensation be given when private property is taken for public use. *Johnson v. City of Plymouth*, 263 N.W.2d 603, 605 (Minn. 1978). State interference "with the ownership, possession, enjoyment, or value of private property" can give rise to a constitutionally compensable taking. *Id.* Minnesota law is well-settled that "property owners have a right of 'reasonably convenient and suitable access' to a public street or highway which abuts their property." *Id.* (quoting *Hendrickson v. State*, 267 Minn. 436, 446, 127 N.W.2d 165, 173 (1964)).

The concept of a compensable taking of reasonable access is one with which the courts have "long struggled." *Johnson*, 263 N.W.2d at 606. As part of that struggle, the courts have adopted "labels for the results they have reached [that] generate substantial linguistic and analytical confusion." *Id.*

> The result has been the creation of an unfortunate rhetorical device: Reasonable assertions of the police power are not compensable but the "taking" of a reasonable right of access is compensable.

*Id.* Because it provides no principled way to distinguish between that which is compensable and that which is not, the quoted statement is an inadequate rule of law. *Id.*

■ Furthermore, whereas a public highway improvement project is obviously "undertaken in the interest of the public safety and welfare pursuant to inherent governmental police powers," it is still possible that the project can "deny an abutting property owner the right of reasonable ac-

---

**2.** The legality of such a U-turn was not addressed by the trial court.

cess" and give rise to a compensable taking. *Id.* Therefore, the trial court's finding that Anoka was acting within its police powers is relevant only to show that Anoka acted within its legal authority. Here, the "operative question" is not whether Anoka acted reasonably, but whether Finaserve has lost its right of reasonable access. *Id.* at 607. A reasonable exercise of police powers can deprive a property owner of reasonable access.

There is a particular risk in this area of the law that rules of law become labels or catchall phrases. Anoka maintains that there can never be a compensable injury arising from the division of a roadway by a median as long as there is access in one direction. Anoka also argues that Finaserve is entitled to no more than its access to eastbound CSAH 12 left undisturbed by the construction. We disagree.

Anoka contends that loss of access due to installation of a dividing median can never be compensable.[3] *See State, by Mondale v. Gannons Inc.,* 275 Minn. 14, 23, 145 N.W.2d 321, 329 (1966) ("the dividing of a roadway by [a median] cannot be made the subject of compensation in condemnation"). Anoka's argument plucks this rule of law from its context and transforms it into a catchall phrase, however.

The precept on which Anoka relies is another way of saying that an access right to any road is limited to traffic going in one direction only. *See Hendrickson,* 267 Minn. at 445, 127 N.W.2d at 172. If, however, as here, the property abuts *two* highways and the limiting of access to one side of the first highway could have the effect of unreasonably curtailing access from the second, the fact that a median was used on the first highway should not negate the owner's right to access to at least one side of the second highway. *Cf. id.* at 442, 127 N.W.2d at 170–71 (nonabutting owner not

entitled to damages for denial of access to conveniently located highway).

The trial court stated:

[Finaserve] argues that [the U-turn] unduly restricts access to parcel 6 and violates [Finaserve]'s right to reasonable access. This court does not agree. In demonstrating a violation of the right to reasonable access, [Finaserve] is held to a high standard: "[T]he imposition of even substantial inconvenience has not been considered tantamount to a denial of the right of reasonable access." *Johnson,* 263 N.W.2d at 607 * * *. [Finaserve] has failed to meet that standard. The median installation and the concurrent taking of [Finaserve]'s property did not so interfere with access to [Finaserve]'s property as to be deemed a "taking" of private property within the purview of the Minnesota Constitution, article 1, section 13. Instead, the intersection improvements eliminated the hazard caused by westbound traffic on CSAH 12 crossing eastbound CSAH and entering Parcel 6.

(Emphasis omitted.)

■ We hold that the trial court has construed *Johnson* too narrowly. In *Johnson,* the supreme court said:

What constitutes reasonable access must, of course, depend to some extent on the nature of the property under consideration. The existence of reasonable access is thus a question of fact to be determined in light of the circumstances peculiar to each case.

*Johnson,* 263 N.W.2d at 607. If access to property in an urban area requires "going around the block," a substantial inconvenience might still be reasonable access. If, however, access has been made so inconvenient as to be nearly impossible, there

---

3. Prior to trial, the trial court denied Anoka's motion to certify as important and doubtful questions regarding the trial court's refusal to bar admission of evidence of the median installed on CSAH 12 and to submit Anoka's requested jury instruction relative to the median. In part, the instruction denied by the trial court provided that, even though the median might have

a profound effect on traffic patterns and accessibility to [parcel 6], it cannot be made the basis of compensation in this trial. Therefore, you should not consider any reduction in the value of the land that may result from the installation of the median * * * in your determination of just compensation.

This court denied Anoka's petition for discretionary review on August 21, 1990.

would not be reasonable access. We hold the trial court erred in failing to focus upon whether Finaserve has reasonable access from Highway 65.

We also hold that the trial court erred in failing to make factual findings concerning Finaserve's evidence of the effect of the construction on Finaserve's business. Finaserve points out that it presented uncontroverted evidence that recreational vehicles with trailers and other large vehicles cannot make the U-turn. Finaserve also presented evidence that such vehicles generated the bulk of its patronage. As trier of fact, the trial court is obliged to evaluate that evidence and make findings. If the trial court determines that there has been a disruption in business to the extent asserted by Finaserve, it appears inescapable that Finaserve has a compensable loss of reasonable access from Highway 65.

### DECISION

We reverse and remand to the trial court for further proceedings consistent with this opinion.